**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:
EVAN PHILLIP JOWERS                                Case No.: 24-13584-MAM
                                                   Chapter 11

      Debtor-in-Possession.

_____/

**DEBTOR'S RESPONSE IN OPPOSITION**
**TO COUNSEL HOLDINGS, INC.'S (I) RENEWED MOTION FOR**
**RELIEF FROM THE STAY; AND (II) MOTION TO EXTEND TIME**
**TO FILE COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT**

EVAN PHILLIP JOWERS ("Debtor" or "Mr. Jowers"), hereby files this *Response in Opposition* (the "Response") to *Counsel Holdings, Inc.'s (I) Renewed Motion for Relief from Stay; and (II) Motion to Extend Time to File Complaint Objecting to Dischargeability of Debt* (DE 55) (the "Motion") filed by Counsel Holdings, Inc. ("Movant" or "Counsel Holdings"), and in support thereof, states as follows:

## BACKGROUND

1.    The Debtor filed for bankruptcy relief pursuant to 11 U.S.C. Chapter 11 on April 15, 2024 (the "Petition Date") (DE 1).

2.    Much like Counsel Holdings first frivolous motion for relief from the automatic stay filed on April 22, 2024 (DE 14) and subsequently denied by Order dated May 29, 2024 (DE 39), this Motion is due to be denied.

3.    The automatic stay is one of the most fundamental protections afforded to a debtor under the Bankruptcy Code. the automatic stay provides a debtor with a "breathing spell" during which the Debtor may concentrate on his Chapter 11 case, preserve the integrity of his assets, and operate in a manner that maximizes value for creditors and affords them equitable treatment.

4.      Granting the Motion at this critical stage of Debtor's Chapter 11 efforts would frustrate this fundamental protection.

5.      Over the past decade, Counsel Holdings, through its President and representative, Robert Kinney ("Kinney") has consistently hounded Debtor, going so far as to harass and threaten his family. *See* Kinney's Previous Communications to Debtor, REK DECL. Exhibit E. ("Exhibit B") (Kinney threatened Mr. Jowers that he would "take that car away from [Plaintiff's] mom… put it on YouTube and send it to all to see that [Kinney] did it… com[e] after [Plaintiff's] wife's mink coat… his bank accounts, everything… [Kinney would] literally spend the rest of my life… coming after his business… I'll take his trademarks… his website… and I'll take his used dental floss."); *also see* Kinney's Motion to Sanction ("Exhibit C"); Jowers' Motion to Dismiss ("Exhibit D"). He has even moved this Court to appear *pro hac vice* for no other purpose than to harass Mr. Jowers personally (DE 56).

6.      In addition, Counsel Holdings, through inney, has caused false criminal investigations against the debtor in Hong Kong through their Independent Commission Against Corruption. ("ICAC"). He intentionally caused these investigations, through his politically connected friends in Hong Kong, not because Mr. Jowers did anything wrong, but to ruin his business. The ICAC operates in secret to combat high level bribery of government officials and other forms of high-level government corruption. Mr. Jowers was tipped off by a whistle blower in February 2023 about the ICAC secret investigation against him, and in late 2023 the ICAC started to phone Mr. Jowers directly, asking him to return to Hong Kong and to discuss their investigation of government bribery and corruption.

7.      As a direct result of these patently false accusations and the ICAC's secrecy coupled with no due process rights, Mr. Jowers and his Hong Kong based business partner (who

had to escape Hong Kong on short notice with his native Hong Kong wife, a managing director at Goldman Sachs at the time, and infant child) were forced to abandon their company's headquarters in Hong Kong, and have been unable to travel or return there or face potential arrest by the ICAC.

8.     As a result of Mr. Jowers and his key Hong Kong based business partner not being available to clients in person in Hong Kong for more than a year now, Mr. Jowers client relationships in Hong Kong have been naturally affected by the lack of in-person contact and availability. Mr. Kinney's and Counsel Holdings' scorched earth actions in Hong Kong has already done damage to Mr. Jowers' bankruptcy estate. Mr. Jowers' attorney recruiting business suffered greatly in 2023 as a direct result of Mr. Kinney's and Counsel Holdings actions in Hong Kong, and Mr. Jowers's business has just recovered and is producing again in 2024.

9.     The Debtor, after filing his petition, Debtor's bank accounts were transitioned to Debtor-in-Possession accounts following its Order on 4/15/24.

10.    Following the notification to the Western District Court of Texas of Debtor's bankruptcy filing, Kinney and Counsel Holdings sought to depose the Debtor for litigation in the Western District of Texas, despite earlier notification to Kinney (via email at robert@kinneypc.com and robert@kinneyrecruiting.com) of the bankruptcy filing and imposition of the automatic stay.  While Mr. Kinney and Counsel Holdings ultimately canceled the deposition, they did so only after attempting to get Debtor to attend, and therefore, they, breached the automatic stay.

11.    Furthermore, after the Petition Date, Debtor's counsel, Zachary Zermay, ("Debtor's Counsel") contacted Seth Kretzer, who was appointed as a receiver for Counsel Holdings, and informed him of the automatic stay by emailing him at seth@kretzerfirm.com and leaving him a telephonic voice message.

12.     However, on April 23, 2024, post-petition, Mr. Kretzer, garnished Debtor's personal bank account at Wells Fargo.

13.     While Wells Fargo returned the funds taken after it was notified of Debtor's Chapter 11 filing, this garnishment constituted yet another violation of the automatic stay by Counsel Holdings (this time by and through Mr. Kretzer) and illegally tapping of accounts belonging to the estate. *See* Wells Fargo Reversal and Payment Amount, ("Exhibit A") It was only after Debtor protested to Wells Fargo that the money was returned. *Id*.

14.     On June 20, 2024, Counsel Holdings, filed the instant Motion to lift the automatic stay in these proceedings and to extend the deadline to file a complaint as to the dischargeability of debt.

15.     The deadline to object to dischargeability of debt is July 15, 2024, and Counsel Holdings filed its adversary proceeding on July 3, 2024, so the extension request in the Motion is moot and should be denied as moot.

16.     The Motion, as it pertains to stay relief, fails to articulate any cause to grant the relief it requested.  Instead it mocked Mr. Jowers by stating that he will not incur attorney fees in one of the appeals that he has filed to contest a roughly $2,000,000.0 attorney fee award. It completely ignores that by lifting the automatic stay, Mr. Jowers would have to seek leave to hire experienced federal appellate counsel because he is not an appellate attorney that is able to review a record on appeal—let alone run the gauntlet of the Federal Rules of Appellate Procedure in the capacity of a *pro se* litigant.

17.     Even assuming *arguendo* that he could, such time becoming familiar with the fundamentals of civil appeals, the Fifth Circuit Court of Appeals Local Rules, and reviewing the

record would take up a significant amount of time that he could be using to grow his estate to pay off legitimate creditors.

18.     As seen, Counsel Holdings and Kinney present a danger to the maintenance and distribution of the estate, there is a clear and significant harm to the Debtor if the Court grants the Motion.  Due to Kinney's and Counsel Holdings' past actions, and continued antics, they have demonstrated that allowing the automatic stay to lift will result in continued threats, appropriated funds from the estate's accounts, and the continuance of multiple litigation proceedings, and disruptive harassment of Debtor's business which will further diminish the estate. To be clear, if the stay is lifted, Counsel Holdings (and Kinney) will continue to bury Debtor with legal fees stemming from attempts to collect on its unsecured judgment, keep sending unhinged communications to Debtor and his family to collect the alleged debt, deprive Debtor of capital he needs to continue operating his business, keep trying to have Debtor imprisoned in foreign countries[1], and cripple the bankruptcy estate thereby harming other creditors.  Additionally, since Counsel Holdings has unsecured alleged debt that will not diminish, there would be little, if any, prejudice to Movant if the Court denies the Motion.

19.     Accordingly, there is no cause to lift the automatic stay under the circumstances of these cases. The harm to the Debtor and the estate from lifting the automatic stay far outweighs any harm to Movant from maintaining the automatic stay. Therefore, for all of these reasons, and as set forth in more detail below, the Court should deny the Motion.

---

[1]Mr. Kinney transferred Mr. Jowers to Hong Kong in 2015, but subsequently cancelled Mr. Jowers HK work visa application, without Mr. Jowers' knowledge, and forced Mr. Jowers to work illegally in Hong Kong for 18 months while promising dozens of times that he would have a work visa. Mr. Kinney admitted in writing, after Mr. Jowers finally left Mr. Kinney's company in December 2016 to avoid arrest by HK immigration authorities, that he never intended to get Mr. Jowers a HK work visa and he was misleading Mr. Jowers about the work visa for the entire 18 months.

## ARGUMENT

### A.  Standard of Review

20.     The automatic stay of section 362 of the Bankruptcy Code is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.*), 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic Nat'l Bank v.  N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)).

21.     The automatic stay is designed to give a debtor a "breathing spell" **free from lawsuits** and other collection-type activities while the debtor attempts to reorganize its affairs. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 340 (1977). Implementation and maintenance of the automatic stay is fundamental to the effective administration of pending bankruptcy cases as it provides a debtor protection from "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981) (internal citations omitted).

22.     Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362. "The term 'cause' as used in section 362(d) has no obvious definition and is determined on a case-by-case basis." *See In re Integrated Health Servs., Inc.*, 2000 Bankr. LEXIS 1319, at *2 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R 370,

372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts.").

23.    A lift of the automatic stay is rare and requires a movant to establish the burden of proof. *See generally Timbers of Inwood Forest,* 108 S. Ct. 626, 632 (1988); 11 U.S.C. § 362(g). In order to lift the automatic stay, a court must consider four factors. "When balancing those potential harms, courts consider a number of factors, including (i) the harm to the party seeking relief from the automatic stay if the automatic stay is not lifted; (ii) the harm to the debtor if the automatic stay is lifted; (iii) the interests of creditors; and (iv) the effect on the fair and efficient administration of justice." *See generally*, *In re Vital Pharms.*, 655 B.R. 374, 387 (Bankr. S.D. Fla. 2023).

**B.  There Is No "Cause" To Modify the automatic stay.**
  **a.  Movant cannot lift the automatic stay under 362(d)(4) because Movant does not provide "cause" and the debt in dispute is unsecured and does not involve "property."**

24.    A review of the factors to lift the automatic stay demonstrates that lifting the automatic stay is not warranted. To justify lifting the automatic stay, the Movant asserts that "Counsel Holdings nevertheless asserts that "cause" exists to modify or lift the automatic stay pursuant to subsection (d) of § 362." However, Counsel Holdings misrepresents the statute. While the provision allows lifting of the automatic stay for cause, such cause must be related to "a property." Specifically,

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including the lack of adequate protection of **an interest in property** of such party in interest." 11 U.S.C. § 362(d)

25.     Consequently, courts have only lifted the automatic stay "for cause" when the debt at issue is secured with "property," or some collateral. See *Baker v. Sepich*, No. 18-cv-81595-MIDDLEBROOKS, 2021 U.S. Dist. LEXIS 235415, at *3-4 (S.D. Fla. Oct. 28, 2021) (lifting the automatic stay because the debtor deliberately abused the automatic stay to transfer **property** away from the estate and the debtor's creditor.); *Ohlsson v. U.S. Bank N.A.* (*In re Ohlsson*), No. 21-12784, 2022 U.S. App. LEXIS 28345 (11th Cir. Oct. 12, 2022) (a foreclosure action involving "**real property"**); *Baker v. Bank of Am., N.A.*, 837 F. App'x 754, 756 (11th Cir. 2020) ("a **home** in Fulton County, Georgia") (emphasis added).

26.     Since Movant's Motion lacks cause and does not relate to property, the Motion should be denied because Counsel Holdings has failed to establish its burden of proof.  However, even if this Court rules that Movant's legal judgment is property or has cause, granting such a motion violates the very purposes of the Bankruptcy Code. *In re Celsius Network LLC*, 642 B.R. 497, 499 (Bankr. S.D.N.Y. 2022) ("A fundamental tenet of the Bankruptcy Code is equality of distribution. Chapter 11 cases are collective proceedings designed to assure that all prepetition creditors of the same class are entitled to equal treatment consistent with the absolute priority rule.").

27.     By allowing Counsel Holdings to lift the automatic stay for its unsecured debt, this Court would prioritize one unsecured creditor and allow it to ransack Mr. Jower's estate at the detriment of his current secured creditors and all other equally situated unsecured creditors. Thus, Movant failed to show that it would be harmed if the automatic stay is not lifted. Further, even if Counsel Holdings demonstrated the requisite harm (which they did not), its relief would come at the **expense of every other creditor**.

28.     On the other hand, Mr. Jowers' estate would suffer significant prejudice if the Court were to lift the automatic stay at this critical juncture of the Chapter 11 Cases. Mr. Jowers is currently operating his business, negotiating with stakeholders, responding to the demands of these Chapter 11 Cases, and managing his business to dutifully pay off legitimate creditors.

29.     Lifting the automatic stay would deplete the Debtor's limited resources and undermine one of the key objectives of the automatic stay. *See Rexene*, 141 B.R. at 576; *Borman*, 946 F.2d at 1036 ("The automatic stay was designed … to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it. …").  In addition, lifting the automatic stay could directly affect the Debtor's assets and prejudice the Debtor and its other creditors. *See In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (upholding bankruptcy court's finding that the automatic stay applied and further enjoining prosecution of litigation based, in part, on the direct impact on the debtor's assets caused by the debtor having to bear indemnification obligations and advancement of defense costs in the absence of insurance); *Majestic Star Casino v. City of Gary* (*In re Majestic Star Casino*, LLC), 2010 Bankr. LEXIS 1874, at *5 (Bankr. D. Del. Apr. 28, 2010) ("In addition, the Debtor will have to advance defense costs thereby, at the very least, temporarily diverting much-needed funds—and funds which they do not have to expend absent their lenders' acquiescence.") (citing Continental, 177 B.R. at 481).

**C.  The Balance of Harms Weighs Against Granting the Motion.**

30.     The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the Chapter 11 Cases. *See In re W.R. Grace*, 2007 Bankr. LEXIS 1214, at *9 n.7 ("Even slight interference [with the administration of the case] … may be enough to preclude relief in the absence of a commensurate benefit."); *see also In re DBSI, Inc.,* 407 B.R. 159, 166 (Bankr. D. Del. 2009) ("Courts also place emphasis on

whether lifting the automatic stay will impede […] the orderly administration of the debtor's estate."); *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited."). As a result, cause exists only if the harm that Movant would suffer from maintaining the automatic stay "considerably outweighs" the harm that the Debtor would suffer from lifting of the automatic stay. *See, e.g., DBSI*, 407 B.R. at 166.

### a. Lifting the Automatic Stay Interferes with the Estate.

31.    As seen with Counsel Holdings' and Kinney's previous conduct, they have a demonstrated history of hounding and harassing Mr. Jowers, his family, and his business associates with repeated suits, garnishing Mr. Jower's estate's accounts, and acting on their own interests at the detriment of the estate (see Exhibits B, C, and D). Counsel Holdings also diminished Mr. Jowers' estate by causing false bribery and government corruption investigation, in secret and with no due process, against Mr. Jowers and his business partner in a foreign country where he conducts a significant amount of business, thus denying him access to his office in Hong Kong.

32.    As seen with Counsel Holdings' constant harassment, threats of imprisonment, threats against his family, causing knowingly false serious criminal investigations in Hong Kong, and active attempts to garnish Mr. Jowers' account, Mr. Jowers will be forced to spend more of his limited resources that should rightfully go to all creditors of his estate, due to Counsel Holdings' significant drain on the estate's resources, as well as burdening Mr. Jowers' counsel with unnecessary litigation in addition to the Bankruptcy.

33.    Since lifting the automatic stay would impede the administration of the estate due to the imminent harassment from Counsel Holdings, and by Mr. Kinney, as well as the increased

litigation cost and resource burden, lifting the automatic stay will impede the estate, justifying the denial of the Motion.

### b. Lifting the Automatic Stay Unfairly Prejudices and Harms All Other Creditors.

34.     Moreover, lifting the automatic stay here would harm both Mr. Jowers and the creditors in this case. Forcing Mr. Jowers to litigate at this point would distract and hinder Mr. Jowers from his reorganization efforts and diminish his ability to preserve the value of the estate for the benefit of all creditors. If the Motion is granted, it will invite other lift stay motions that will be filed by similarly situated claimants, leading to an unnecessary drain on the estate--and the Court's--resources. Counsel Holdings fails to show it would sustain more significant harm than other similarly situated claimants if the Motion is denied. Since there are many unsecured creditors, similarly situated to Counsel Holdings, it has not demonstrated that it will be more prejudiced than any other potential creditor by a delay until a plan is in place. *See In re Celsius Network LLC*, 642 B.R. 497, 499 (Bankr. S.D.N.Y. 2022) (holding that 362(d)(4) does not apply to unsecured creditors, and dismissing the motion for relief.).

35.     As described above, the harm that the Debtor would suffer if the automatic stay were lifted would be substantial. Also, Movant would unjustly benefit from lifting the automatic stay at the expense of all other creditors.

36.     Since Counsel Holdings, as a Creditor, is not unjustly prejudiced, and willfully violated the automatic stay twice (that we know of) as of the filing of this Response, this Court should not reward such open contempt of the fundamental rules of bankruptcy, nor should this Court aid a clear danger to the estate.

37.     Thus, much like the April 22, 2024 motion to lift the automatic stay that Counsel Holdings, Inc. filed, this Motion should also be denied. Except this time *with prejudice.*

## <u>CONCLUSION</u>

38.    Counsel Holdings has utterly failed to demonstrate "cause" for lifting the automatic stay. Contrary to the assertions in the Motion, Mr. Jowers will suffer prejudice if forced to defend against Movant's claims at this stage in the case, while Movant has failed to make a legitimate showing of prejudice to itself.  Granting the relief requested in the Motion will deplete estate resources, be highly disruptive to Mr. Jowers' reorganization efforts, and offend the basic purposes of the automatic stay.

**WHEREFORE,** the Debtor respectfully requests that this Court deny Movant's Motion, with prejudice, and for such other and further relief as the Court deems just and proper.

Dated:  July 12, 2024

**ZERMAY LAW P.A.**
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
Telephone: (305) 767-3529
Facsimile: (954) 756-7103

By: /s/  **Zachary Z. Zermay, Esq.**
Zachary Z. Zermay, Esq.
Florida Bar No. 1002905
zach@zermaylaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent this 12th day of July 2024, to all parties registered through CM/ECF and as listed on the attached copy of this Court's mailing matrix.

Dated:  July 12, 2024

**ZERMAY LAW P.A.**
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
Telephone: (305) 767-3529
Facsimile: (954) 756-7103

By: <u>/s/  **Zachary Z. Zermay, Esq.**     </u>
Zachary Z. Zermay, Esq.
Florida Bar No. 1002905
zach@zermaylaw.com

# EXHIBIT A

Sign off

# Transaction details

# $10.00

Transaction: 04/23/2024

Posted: 04/23/2024

---

# Additional info

**Category**

Other Insurance/Financial

**Transaction description**

LEGAL ORDER DEBIT - CONTACT SETH KRETZER, COURT APPONTED RECEIVER (713) 775-3050 - CASE# 19414124

---

3:45 



 66%

‹                                                                 🔔 ②   Sign off

**WELLS FARGO CLEAR ACCESS BANKING ...4501**

# $20.00

Available balance   ⓘ

| Overview | Manage | Routing & balance info |
|---|---|---|

## Transactions ⓘ

🔍  

---

 Pending                      +$10.00
**ZELLE FROM MICHAEL CARR ON 04/25 REF # BACP8MZD**

---

04/23/2024                      +$10.00
**LEGAL ORDER REVERSAL - CONTACT SETH KRETZER, COURT APPONTED RECEIVER (713) 775-3050 - CASE# 19414124**

---

04/23/2024                      $10.00
**LEGAL ORDER DEBIT - CONTACT SETH KRETZER, COURT APPONTED RECEIVER (713) 775-3050 - CASE# 19414124**

---

04/22/2024                      +$10.00
**ZELLE FROM MICHAEL CARR ON 04/20 REF # BACM07AEE81L CHIPOTLE**

---

 Accounts     Deposit     Pay & Transfer     Explore     Menu

# EXHIBIT B

## Mediation on Nov. 21, 2022

**Robert Kinney** <robert@kinneypc.com>                              Thu, Sep 22, 2022 at 7:14 PM
To: Robert Kinney <robert@kinneypc.com>
Cc: Kevin Cole <kevin@kjclawgroup.com>, Robert Kinney <robert@kinneypc.com>

Kevin, I realize I may be sounding too nice here.  We just offered a reasonable settlement and Evan's response was to go buy a $90K car and brag about it on Facebook. I guess I should express my intentions more clearly. Let Evan know that this and a lot of the other stuff I know he is doing right now to flush cash qualifies as fraudulent transfers. I'm going to subpoena all his records, including his email and phone, which you won't be able to stop me from getting.  I will find out what all those transfers are, and as far as the car goes, I'm going to have the sheriff take that car away from his mom while she is watching with someone there to videotape the scene and then I'm going to put it on Youtube and send it to all to see that I did it.  I'm coming after his wife's mink coat that he spent $20K on, his bank accounts, everything.  I'm not going to get played by this joker any more. He needs to pay up.   I will literally spend the rest of my life or his coming after his business.  When he runs to a foreign country, I'll get the court to let me force placement fees he might have any connection to into the registry of the court to be sorted out later.  I'll take his trademarks, I'll take his website, and I'll take his used dental floss.  Running from this problem is NOT going to work.  Please do your best to get this across.  Many thanks.

REK


Robert E. Kinney, Esq.
Attorney at Law
Mobile: +1-512-636-1395

_____
This communication may be privileged or contain confidential information. If it has been sent to you in error, please do not read it, reply to the sender that you received it in error, and delete it.  Any distribution or other reproduction is strictly prohibited.
_____


On Thu, Sep 22, 2022 at 6:43 PM Robert Kinney <robert@kinneypc.com> wrote:
   Take my word for it this time - it's a nice, brown Q5 or Q7, I think.  Mom looks very happy in the photo.  I'm not sure if Evan realizes that having his mom participate in a fraudulent transfer to defraud a Texas creditor will subject her to specific personal jurisdiction in Texas, ending up in seizure of that car and whatever else he's giving her. Someone needs to convince him to stop the games.

   Robert E. Kinney, Esq.
   Attorney at Law
   Mobile: +1-512-636-1395

   _____
   This communication may be privileged or contain confidential information. If it has been sent to you in error, please do not read it, reply to the sender that you received it in error, and delete it.  Any distribution or other reproduction is strictly prohibited.
   _____


   On Thu, Sep 22, 2022 at 6:37 PM Kevin Cole <kevin@kjclawgroup.com> wrote:
      Thanks, Robert.  It was nice speaking with you, too.  I'll convey all this to Evan.

      I have no idea about what he is or isn't doing; but nonetheless, will discuss this ASAP.

      On Thu, Sep 22, 2022 at 4:28 PM Robert Kinney <robert@kinneypc.com> wrote:
         It's my understanding from various sources that Evan's flushing his cash already.  When I start seizing new Audi Q-series cars that he just gifted his mother, for example, it's going to get real for him, if not sooner.  I don't know why he thinks I will not do that.

**Exhibit E to REK Decl.**                                    **Page 1 of 3**

I need $200,000 if he wants any sort of stay.

Robert E. Kinney, Esq.
Attorney at Law
Mobile: +1-512-636-1395

_____

This communication may be privileged or contain confidential information. If it has been sent to you in error, please do not read it, reply to the sender that you received it in error, and delete it. Any distribution or other reproduction is strictly prohibited.

_____

On Thu, Sep 22, 2022 at 6:00 PM Robert Kinney <robert@kinneypc.com> wrote:
Kevin,

Thanks for trying to help in this process. Evan really needs someone who is intelligent and dispassionate to help him look at this situation. I hope you are that guy.  Sending this to you only because I view it as a confidential and privileged settlement discussion.  Please treat it as such.

To reiterate our call:

1.  I'm willing to come to a mediation Nov 21, but I would like Evan to show that he realizes the fix he's in by starting to pay something down on the judgment. If he wants us to delay execution, this is a must.  I propose $200,000.

2.  If Evan wants to start the healing, then he needs to drop his two cases in FL and HK. They have negative merit.  In summary, I can't speak for Mark Poe but I would hope he'd agree to a walk away; also, the HK case is one Evan is going to lose and pay fees on. It's just a question of when and how much. Right now, it's just getting worse.

3.  Regardless of Evan's position on any of the above, **we should be able to agree to the fees, costs, and interest in this case**, thereby saving the court and ourselves some work and Evan some costs. You know I'm willing to do the work if I have to.  Let's do this first, by tomorrow ideally.

4.  Finally, I do understand Evan's emotional reaction to this situation, but he has got to understand by now that the best way out of this is to pay his way out.  If I can help him find enough equilibrium to pay the piper by sitting down with him at a mediation and shaking his hand, I will.  But I brought valid claims against him and, instead of getting decent advice, he hired DLA and then RT to work to terrorize me for asserting rights we clearly had. He should not expect to just talk his way out of this now that there's a judgment any more than he could on December 18, 2016. I'm prepared to collect on this judgment. What we have offered is a reasonable offer.

I look forward to the result of your discussions with Evan, especially with regard to the fees, interest and costs.

One other issue: I would like to file a motion to change the style of the case to conform to the evidence presented, that the Plaintiff is now called Counsel Holdings, Inc.  Can you confirm whether you would be opposed to such a motion, which I could handle along with the fees, interest, and costs if we are so lucky to have agreement?

Robert E. Kinney, Esq.
Attorney at Law
Mobile: +1-512-636-1395

_____

This communication may be privileged or contain confidential information. If it has been sent to you in error, please do not read it, reply to the sender that you received it in error, and delete it. Any distribution or other reproduction is strictly prohibited.

_____

On Thu, Sep 22, 2022 at 2:56 PM Kevin Cole <kevin@kjclawgroup.com> wrote:
Hi Robert:

It was nice speaking with you earlier today.  I appreciate you having reached out.

Following up on the vm I just left you; I've also included Judge Keel on this email.

Judge Keel conveyed the offer to me, which I've already discussed with Evan.  Even after hearing the offer, Evan has insisted on an in-person mediation, and has agreed to pay the full mediation fees.

The only request on our end is that the parties stipulate to stay enforcement of the judgment until Nov. 21. First, we requested an earlier mediation date with Judge Keel, but Nov. 21 is the earliest date Judge Keel has available.  Second, my understanding is enforcement efforts are automatically stayed for a certain period in any event, and so I view this as a reasonable request (especially considering Evan's offer to pay all the mediation fees).

Thanks in advance,

--
**Kevin J. Cole, Esq.**
Partner

**KJC Law Group, A.P.C.**

9701 Wilshire Blvd., Suite 1000

Beverly Hills, CA  90212

Telephone: (310) 861-7797

Facsimile: (818) 994-9200

www.kjclawgroup.com



**Beverly Hills | Los Angeles | Alhambra | Detroit**

--
**Kevin J. Cole, Esq.**
Partner

**KJC Law Group, A.P.C.**

9701 Wilshire Blvd., Suite 1000

Beverly Hills, CA  90212

Telephone: (310) 861-7797

Facsimile: (818) 994-9200

www.kjclawgroup.com



**Beverly Hills | Los Angeles | Alhambra | Detroit**

# EXHIBIT C

# IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT IN AND FOR ALACHUA COUNTY, FLORIDA GAINESVILLE DIVISION

EVAN JOWERS,

     Plaintiff,

     v.                     Case No.: 01-2022-CA-3042, Division K

ROBERT E. KINNEY, and
MWK RECRUITING, INC.,

     Defendants

---

## **DEFENDANT ROBERT E. KINNEY'S MOTION FOR SANCTIONS**

## I.    Introduction

Pursuant to Florida Statutes section 57.105, Defendant Robert Kinney respectfully moves this court for an order imposing sanctions against Plaintiff Evan Jowers and his counsel Zachary Zermay for filing this action against Mr. Kinney and MWK Recruiting, Inc. (now known as Counsel Holdings, Inc.) ("**MWK**"). From its inception, each claim in this case was unsupported "by the material facts necessary to establish the claim" and the Complaint's causes of action "[w]ould not be supported by the application of then-existing law to those material facts." Fla. Stat. § 57.105(1). "The central purpose of section 57.105 is, and always has been, to deter meritless filings and thus streamline the administration and procedure of the courts." *Mullins v. Kennelly*, 847 So.2d 1151, 1154 (Fla. 5th DCA 2003). If ever there was an appropriate case for these sanctions, this is it, because not one single basis for jurisdiction or claim in this matter is supported by the material facts or any application of the law to those facts, and all the allegedly injurious statements were absolutely privileged.

## II.    Statement of the Case

As described in detail in the Motion to Dismiss of Defendant Robert E. Kinney, filed February 26, 2023 (the "**Motion to Dismiss**"), Mr. Jowers and Mr. Zermay filed this suit against Defendants because Mr. Kinney represented MWK in obtaining (in Texas) a judgment of more than $3.6 million against Jowers for his thefts and breaches of employment related agreements (the "**Texas Judgment**"). *See* Motion to Dismiss, at 1. This case is part of the petty vendetta and scheme for retribution and obstruction that Mr. Jowers has been implementing since prior to the issuance of the Texas

Judgment, and he has promised that it will continue. *See* Compl. ¶16 (promising a "multiplicity of suits"); Motion to Dismiss, at 1 fn. 2 (citing dismissed Monroe County, Florida, case against attorney Mark Poe also filed by Mr. Jowers).

### III.   Mandatory Nature of Sanctions when Warranted

Mr. Jowers's motivation is irrelevant to an analysis under Fla. Stat. 57.105. What is important under the statute is whether a movant can "show that the party and counsel 'knew or should have known' that any claim or defense asserted was (a) not supported by the facts or (b) not supported by an application of 'then-existing' law." *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 570 (Fla. 2005). If the movant makes the requisite showing under section 57.105, then sanctions are mandatory. *See Albritton v. Ferrera*, 913 So.2d 5, 8-9 (Fla. 1st DCA 2005) (noting that the word "shall" in section 57.105 evidences "the legislative intent to impose a *mandatory* penalty in the form of reasonable attorney's fees to discourage baseless claims, by placing a price tag on losing parties who engage in these activities"); *see also*, *de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 685 (Fla. Dist. Ct. App. 2007) ("[W]e again remind the bar that section 57.105 expressly states courts 'shall' assess attorney's fees for bringing, or failing to timely dismiss, baseless claims or defenses." The mandatory nature of these sanctions represents a value judgment by the Florida Legislature that the Supreme Court has recognized: "While counsel does have an obligation to be faithful to his client's lawful objectives, that obligation cannot be used to justify unprofessional conduct by elevating the perceived duty to zealously represent over all other duties." *Boca Burger, at* 571 (citation omitted).

## IV.    Safe Harbor

Before filing this motion for section 57.105 sanctions, Defendants complied with the twenty-one-day "safe harbor" provision of section 57.105(4) by sending a copy of this Motion to Mr. Zermay on February 24, 2023. Mr. Zermay did not withdraw the claims following notice of Defendants' intention to seek sanctions.

## V.    Summary of Material Facts and Argument

In this case, any reasonable attorney would have known or should have known that the facts completely undermine each of the claims Mr. Jowers makes in this case. The reasons this is true are elaborated in the Motion to Dismiss, but the following summary with page references to the Motion to Dismiss may assist the Court:

1. The communications at issue were sent from a person in Texas (Mr. Kinney) to a person in California (Mr. Cole) and were not sent to anyone in Florida, making personal jurisdiction predicated on those communications unavailable. Motion to Dismiss, at 7-8.

2. Mr. Jowers claimed to be a resident of Hong Kong at the time that his alleged injuries under the FCCPA occurred and thereafter. Motion to Dismiss, at 9.

3. When Mr. Kinney sent the communications to Mr. Cole in California, Mr. Jowers was physically located in Louisiana. Motion to Dismiss, at 9.

4. No other actions of MWK or Mr. Kinney in Florida were the basis for any of Mr. Jowers's claims. Motion to Dismiss, at 10.

5. Neither Mr. Kinney nor MWK have the sort of continuous and systematic contacts with Florida that would justify the exercise of general jurisdiction over them. Motion to Dismiss, at 9.

6. Mr. Kinney is an attorney who represents MWK, and the communications sent by him to Mr. Cole in California were settlement communications related to an ongoing litigation matter, rendering them completely privileged under well-established law. Motion to Dismiss, at 10-11.

7. The debt in question is debt primarily related to Mr. Jowers's thefts and breaches of his employment agreements, and therefore is not consumer debt within the meaning of the FCCPA. Motion to Dismiss, at 12-14.

8. Mr. Kinney did not tell Mr. Jowers anything, let alone that he or any person employing him would disclose information affecting Mr. Jowers's reputation. Motion to Dismiss, at 15.

9. Mr. Kinney did not communicate with Mr. Jowers or a member of his family with unreasonable frequency or engage in conduct that could reasonably be expected to abuse or harass him. Motion to Dismiss, at 16.

10. Mr. Kinney did not use "profane, obscene, vulgar, or willfully abusive language" in communicating with Mr. Jowers. Motion to Dismiss, at 16.

11. Mr. Kinney did not assert the existence of a legal right he knew did not exist. Motion to Dismiss, at 17.

12. Mr. Kinney did not publish or threaten to publish Mr. Jowers's name on a "deadbeat list." Motion to Dismiss, at 18.

## VI. Pro Se Attorney Mr. Kinney is Entitled to Recover Fees for his Time

As an attorney representing himself in this matter, Mr. Kinney is entitled to recover attorney fees just as if he were represented by counsel. *Albritton v. Ferrera*, 913 So. 2d 5, 10 (Fla. Dist. Ct. App. 2005) (collecting cases and holding, "[b]ecause an

award of attorney's fees under section 57.105 is proper, [pro se attorney] is entitled to such a fee for representing himself just as though he had hired outside counsel. In fact, he is entitled to reasonable fees even if the award results in a windfall.").

## VII.    Argument

As noted, although this is an entirely frivolous case by any standard, the Court need not make a finding of frivolousness. *Martin Cty. Conservation Alliance v. Martin Cty.,* 73 So. 3d 856, 858 (Fla. 1st DCA 2011). Rather, the Court **must** award sanctions if either the claims are "not supported by the material facts," or if the claims "[w]ould not be supported by the application of then-existing law to those material facts." Fla. Stat. § 57.105(1)(a), (b). In this case, both provisions apply.

### A.    Jurisdiction over MWK and Mr. Kinney is obviously lacking.

First, the central allegation, that Mr. Kinney made statements to Mr. Jowers that implicate the FCCPA and provide the Court with a basis to assert jurisdiction over Mr. Kinney and MWK, is false. As is evident from the statements themselves, as quoted in the Complaint, Mr. Kinney never said anything to Mr. Jowers, but rather to his attorney, Mr. Cole. Moreover, the allegations in the Complaint do not even bother to assert that Mr. Kinney purposefully directed those statements into Florida. In fact, the statements were made to Mr. Cole in California, Mr. Jowers was located in Louisiana and was claiming to be "ordinarily resident in Hong Kong." Motion to Dismiss, at 9. Mr. Jowers and Mr. Zermay were aware of all these material facts, and they should have known these facts undermine any claim for this Court to exercise jurisdiction over these defendants, but they did not care.

### B.    The litigation privilege applies to the allegedly injurious statements.

A further material fact related to the Court's determination regarding sanctions is that Mr. Kinney was acting as an attorney for MWK when he made the statements in question to Mr. Cole, acting as Jowers's attorney, during these proceedings. Mr. Zermay and Mr. Jowers were aware of this. They are also well aware that such communications made in connection with judicial proceedings is privileged under the "absolute immunity" conferred by Florida's "litigation privilege." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994). *See Jackson v. Bell South Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004) ("Events taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings").

Mr. Zermay cannot avoid liability by claiming that he was unfamiliar with the doctrine of litigation privilege.[1] The seminal case—*Levin*—is not some obscure precedent. According to Westlaw, *Levin*'s explanation of the "absolute immunity" conferred by the litigation privilege has been quoted in 226 opinions over the 28 years since it was written. Filing a lawsuit that is plainly barred by the litigation privilege is sanctionable under section 57.105(1)(b). *See Davis v. Bailynson*, 268 So.3d 762, 769–70

---

[1] Should the Court award section 57.105 sanctions solely under subsection (1)(b) for the Complaint being unsupported by law, those sanctions are to be awarded only against Mr. Zermay, for pursuing baseless legal theories. *See Davis v. Bailynson*, 268 So.3d 762, 767 (Fla. 4th DCA 2019) ("We, as well as our sister courts, have consistently held that under 57.105(1)(b), only a party's attorney may be ordered to pay attorney's fees under section 57.105(3)(c).") (collecting cases).

(Fla. 4th DCA 2019) (affirming sanctions because "Cohen [i.e., the lawyer] should have known [the litigation privilege] applied").

C.  **The debt under the Texas Judgment is not consumer debt within the meaning of the FCCPA.**

As is described in the Motion to Dismiss, the judgment debt Jowers owes is debt which was created by his thefts of trade secrets and his breach of employment-related agreements. This is not consumer debt, which is a requirement of every violation under section 559.72 charged by Mr. Jowers. Motion to Dismiss, at 12-14.  Mr. Jowers does not even bother to allege that the debts in question are consumer debts, and they are not. "Indeed, court ordered obligations that do not arise from consumer transaction are consistently held to not constitute "debts" for the purposes for the Acts." *Id.* (citing *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1371 (11th Cir.1998) for the proposition that "the obligation of a tortfeasor did not arise from a "transaction" needed to give rise to a "debt"). Courts interpreting the FDCPA have also uniformly refused to consider obligations for damages for theft to be covered by the definition of "debt." *See Beauvoir v. Israel*, 794 F.3d 244, 247-48 (2d Cir. 2015) ("We join our sister circuits and hold that money owed as a result of theft is not an 'obligation or alleged obligation of a consumer to pay money arising out of a transaction' and, therefore, does not constitute a 'debt' for purposes of the FDCPA. 15 U.S.C. § 1692a(5).").

D.  **Even if the debts were consumer debts, the facts do not support the specific allegations under the FCCPA.**

For the reasons described in further detail in the Motion to Dismiss, each of the alleged violations of section 559.72 is not supported by the material facts that were

known to Mr. Jowers and Mr. Zermay or by any good faith application of the law to those facts. *See* Motion to Dismiss, at 14-18.

## VIII.  Conclusion

"[S]ection 57.105 requires claimants to continuously evaluate the merits of their claims." *Bowen v. Brewer*, 936 So. 2d 757, 762 (Fla. 2d DCA 2006). Given that Jowers and Zermay refused to withdraw their claims after they learned (not later than MWK and Mr. Kinney's safe-harbor notice of February 27, 2023) that their complaint was unsupported "by the material facts necessary to establish [their] claim," and that their Complaint could not be "supported by the application of then-existing law," Fla. Stat. § 57.105(1)(a), (b), they should now face the mandatory consequences that follow from having further wasted this Court's time, Mr. Kinney's time, and the time of local counsel MWK was required to instruct in order to respond to the Complaint.

Dated: March 17, 2023                          Respectfully Submitted,

                                               /s/ Robert E. Kinney
                                               Robert E. Kinney
                                               Texas State Bar No. 00796888
                                               Robert@KinneyPC.com

                                               **Robert E. Kinney**
                                               824 West 10th Street, Suite 200
                                               Austin, Texas 78701
                                               Tel: (512) 636-1395

                                               **ATTORNEY PRO SE**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was sent to the following counsel of record in substantially the same form by email on February 24, 2023, and then filed electronically and e-Served by the Florida Court's E-Filing Portal on March 17, 2023.

Zachary Z. Zermay
zach@zermaylaw.com
203 Labelle Ave.
Tice, FL 33905
*Counsel for Plaintiff*

                                               /s/ Robert E. Kinney
                                               Robert E. Kinney

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

COUNSEL HOLDINGS, INC.

**Plaintiff**

v.

**EVAN P. JOWERS, LEGIS VENTURES
(HK) COMPANY LIMITED, JOWERS
VARGAS LLC, and JOWERS LANGER
LLC,**

**Defendants.**

Civil Action No. 1:23-CV-711

**DEFENDANTS EVAN P. JOWERS'S
<u>MOTION TO DISMISS</u>**

Defendants Evan P. Jowers ("**Jowers**") moves to dismiss the claims asserted against Defendants in the Original Complaint For Declaratory and Injunctive Relief (the "**Complaint**") [ECF Doc. No. 5] filed by Plaintiff Counsel Holdings, Inc., formerly known as MWK Recruiting, inc. ("**MWK**") for lack of standing under Fed. R. Civ. P. 12(b)(1), and lack of personal jurisdiction under Rule 12(b)(2).

# TABLE OF CONTENTS

## TABLE OF AUTHORITIES

## PRELIMINARY STATEMENT

Well, its Groundhog Day—again—and Robert Kinney ("Kinney") is suing Evan Jowers in the United States District Court for the Western District of Texas. As the Court may recall, the underlying litigation bearing case number 1:18-cv-00444 (the "First Lawsuit") that gave rise to this case (the "Collateral Proceedings") involves a litigious ex-employer, attorney recruiter, and who is actively moonlighting as a consumer debt collector and unlicensed lawyer in the State of Florida, who is using this Collateral Proceedings to harass Evan P. Jowers. The lawsuit, which targets Jowers and seeks to get a second bite at the apple (and Mr. Jowers). Fortunately, the Court and Mr. Jowers are not doomed to relitigate this case because "[t]he doctrine of res judicata contemplates, at minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction." *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983). Moreover, MWK has completely failed to satisfy the Rule 12(b)(6) standards and state sufficient ultimate facts to demonstrate that any of the named defendants are Mr. Jowers's alter ego, or otherwise pierce a corporate veil.

Moreover, the Court lacks personal jurisdiction over Mr. Jowers. At all relevant times, Jowers worked primarily in Hong Kong and the State of Florida. The Complaint fails does not allege a single act that Mr. Jowers ever took in Texas. While Mr. Jowers accepts that the Court found personal jurisdiction in the First Lawsuit—given that these are Collateral Proceedings attempting to modify the original judgment—he must again raise it so as to avoid waiving the argument in the First Lawsuit.

Furthermore, the Complaint fails to state a claim. It is a hodgepodge of conclusory allegations that fail to state a plausible claim and constitutes an impermissible shotgun pleading that fail to satisfy the *Twiqbal* pleading standards. *See Bell Atlantic Corp. v. Twombly*, 550 U.S.

544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For the reasons set forth in full below, the Complaint must be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

From April 2006 until June 2015, Jowers was an attorney recruiter and employee of Kinney Recruiting, LLC (and its predecessor), an attorney placement business at which Robert Kinney is the principal officer and manager. *See* Amended Petition ¶ 11; **Ex. A, Declaration of Evan P. Jowers** ("**Jowers Decl.**") ¶ 2. While employed there, he was based exclusively in Miami, Florida. Amended Petition ¶ 20; Jowers Decl. ¶ 8. Jowers recruited attorneys for placements at large U.S. and U.K. based law firms. *See id.* Over time, acting on his own initiative, Jowers began to focus his efforts almost exclusively on placing candidates in such firms' Asian offices. *Id.*

Although Jowers signed an Associate Recruiter Employment Agreement ("**Employment Agreement**") with Kinney Recruiting, L.P. on May 1, 2006, he never became an employee of Kinney Recruiting, L.P. and that company never paid him any wages. [ECF Doc. No. 1-3 at 28]; Jowers Decl. ¶ 4; *see* Amended Petition ¶ 8. The Employment Agreement is governed by Florida law, and contains certain restrictive covenants, including an indefinite and draconian confidentiality provision and non-solicitation covenants purporting to require him not to solicit any of the employees or candidates or clients of Kinney Recruiting, L.P. for a period of 1 year after the termination of his employment. [ECF Doc. No. 1-3 at 31–32, 33 (Employment Agreement §§ 7.2, 8.1, 8.2, 12.1)].

In June 2015, Jowers relocated primarily to Hong Kong, where he worked on behalf of Kinney Recruiting Limited, a Hong Kong limited company ("**Kinney Recruiting Hong Kong**"). Jowers Decl. ¶ 2; *see* Amended Petition ¶¶ 11, 24. In December 2016, he resigned from Kinney Recruiting Hong Kong and soon thereafter became an attorney recruiter for Legis Ventures. Jowers

Decl. ¶¶ 2, 4. Although Legis Ventures refers to itself in some marketing materials as Jowers/Vargas, Jowers is not an officer, owner, director, or other governing person of Legis Ventures. *Id.* ¶ 10. About the same time, Jowers's ex-wife, Yuliya Vinokurova, who was an attorney recruiter for Kinney Recruiting, LLC, left that company and became a recruiter with Legis Ventures as well. Amended Petition ¶ 34.

MWK filed its Original Petition on March 27, 2017, in state district court in Travis County, Texas, which included a request for injunctive relief. [ECF Doc. No. 9-1 at 2]. Although citations (i.e., Texas summons) were issued, service was not accomplished and nothing took place in the lawsuit. [*See id.*] On March 26, 2018, one day shy of a year after commencing the suit, MWK filed its Amended Petition, dropping its request for injunctive relief, which MWK had never set for hearing. [*See id.*] More than a year after filing, MWK requested issuance of new citations and served Jowers and—purportedly through Jowers—Legis Ventures. [*See id.*] On May 25, 2018, Jowers timely removed the case to this Court.

The Amended Petition alleges a number of claims against Jowers, his ex-wife Vinokurova, and Legis Ventures. In essence, its only specific complaints under the Employment Agreements are that Jowers allegedly was in contact with six candidates—which MWK knows because Jowers sent a candid email discussing these facts—and that Vinokurova also left her employment at Kinney Recruiting. Amended Petition ¶¶ 33–34 & Ex. 8; [ECF Doc. No. 1-3 at 118]. It also claims that Jowers owes certain outstanding "loans" for pay advances (which he doesn't) under certain loan agreements governed by Texas law. Amended Petition ¶ 61. Otherwise, it largely regurgitates its breach of contract claims as various tort or statutory claims, including fraud, tortious interference, and misappropriation under the Texas Uniform Trade Secrets Act ("**TUTSA**").

## APPLICABLE LEGAL STANDARDS

### A. Standard Under Rule 12(b)(1).

Standing is an indispensable component of subject matter jurisdiction and may be challenged under Rule 12(b)(1). *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560 (1992). "Standing requires, at a minimum, three elements: injury in fact, a 'fairly traceable' causal link between that injury and the defendant's conduct, and the likelihood that the injury will be 'redressed by a favorable decision.'" *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560–61). "There are three avenues for a movant to demonstrate a lack of jurisdiction: (1) on the face of the complaint alone; (2) the complaint supplemented by undisputed facts in the record; and (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *Lifesize, Inc. v. Chimene*, A. No. 1:16-CV-1109-RP, 2017 WL 1532609, at *3 (W.D. Tex. Apr. 26, 2017) (citing *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004)). The burden of demonstrating jurisdiction rests with MWK—the party invoking it. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Standard Under Rule 12(b)(2).

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because Texas's long-arm statute extends to the limits of due process, the principal question is whether jurisdiction is consistent with the U.S. Constitution. *Id.*

The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper. *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). To do so, the

plaintiff must show both that the nonresident defendant "purposefully availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state" and that "the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Sufficient minimum contacts may give rise to either specific or general jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Mink*, 190 F.3d at 335. "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.*

### C.  Standard Under Rule 12(b)(5).

Sufficiency of service of process prior to removal of a case to federal court is determined under state law. *E.g.*, *Robinson v. Roxy Invs., L.P.*, Civ. Ac. No. 3:07-cv-189 HTW-LRA, 2008 WL 3165834, at *2 (S.D. Miss. Aug. 1, 2008) (citing *Freight Terminals, Inc. v. Ryder Systems, Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972)). Under Texas law, "the plaintiff has the burden of affirmatively showing *strict compliance* with the [long-arm] statute." *MobileVision Imaging Servs., L.L.C. v. LifeCare Hospitals of N. Tex., L.P.*, 260 S.W.3d 561, 564 (Tex. App.—Dallas 2008, no pet.) (quotation omitted) (emphasis added). "If strict compliance is not affirmatively shown, the service of process is invalid and has no effect." *Barker CATV Const., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *Uvalde Country Club v. Martin Linen Supply*, 690 S.W.2d 884, 885 (Tex. 1985)).

### D.  Standard Under Rule 12(b)(6).

As set forth in *Twombly* and *Iqbal*, Rule 8 requires that a pleading contain sufficient facts to, if accepted as true, state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). This requires more than threadbare, unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT AND AUTHORITIES

### A. MWK Lacks Standing to Bring Claims Against Defendants.

#### *1. MWK Lacks Standing to Assert its Breach of Contract Claims.*

As a threshold matter, MWK lacks standing to bring any claims against Defendants. Ordinarily, under both Texas and Florida law, a nonparty to a contract may not bring suit to enforce it. *E.g.*, *Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 386–87 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005). The only nonparties that have standing to enforce a contract are third party beneficiaries where the contract contains a clear indication that the actual parties intended to confer a direct benefit on the third party. *Young*, 46 S.W.3d at 387. Incidental benefits are not enough. *Id.* For this reason, under Texas law, "[t]here is a presumption against, not in favor of, third party beneficiary agreements." *Id.* Further, under Florida law, a third party cannot file suit to enforce a restrictive covenant, such as a non-solicitation or confidentiality clause, as a third party beneficiary unless the agreement expressly states that the restrictive covenant is intended for the benefit of the third party. FLA. STAT. ANN. § 542.335(1)(f)(1).

MWK is indisputably a nonparty to the agreements attached to its Amended Petition. The Employment Agreement is with *Kinney Recruiting, L.P.*, not MWK. [*See* ECF Doc. No. 1-3 at 28, 34, 35 (Amended Petition, Ex. 1)]. The "Promissory Note" and "Loan Agreement" dated

December 29, 2012 are between Evan P. Jowers and *Counsel Unlimited LLC*, not MWK. [*See id.* at 53, 59, 76 (Ex. 3)]. The same is true of the "Security Agreement" dated October 15, 2012. [*See id.* at 78, 95 (Ex. 3)]. Similarly, the "Forgivable Loan Agreement" dated February 1, 2012, is between Evan P. Jowers and *Recruiting Partners GP, Inc. d/b/a Kinney Recruiting, Inc.*, as is the accompanying "Promissory Note" of the same date. [*See id.* at 101, 105, 106 (Ex. 4).]

MWK does not allege that it is an intended third party beneficiary of any of the agreements, nor has it alleged that it is an assignee of any of the contracting parties or that any assignment agreements exist. Standing must exist at the time a cause of action commences; it cannot be created later. *E.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). MWK has not alleged that any of the seven agreements attached to the Amended Petition were ever assigned to it or that it is a successor of the contracting party, much less that each of them were assigned *prior* to the filing of the instant suit. Since MWK is not even mentioned or referred to in any of the agreements, the presumption against third party beneficiaries bars it from claiming that it has standing to bring suit under the agreements governed by Texas law, and Florida statutes bar it from suing to enforce Jowers's Employment Agreement. *See Young*, 46 S.W.3d at 387; Fla. Stat. Ann. § 542.335(1)(f)(1).

Further, Jowers was only an employee of Kinney Recruiting, LLC during the relevant time period. Jowers Decl. ¶ 2. He was never an employee of MWK Recruiting, Inc. or its predecessor, MWK Recruiting, LLC, or of Kinney Recruiting, L.P., the entity with which he entered into the Employment Agreement. *Id.* ¶ 4. He never received any paycheck from either MWK entity or Kinney Recruiting, L.P.—instead, he was employed by and received payments from Kinney Recruiting, LLC. *Id.* Further, MWK itself did not place any candidates, send invoices to clients, or receive any payments. *Id.* MWK cannot assert any benefits under the Employment Agreement,

particularly where Jowers's actual former employer, Kinney Recruiting, LLC, is still operating in the same line of business, because MWK has no legitimate business interest in Jowers's prior relationship with Kinney Recruiting, LLC. *See id.* Nor for that matter could Kinney Recruiting, LLC, which is not a party to the Employment Agreement.

### 2. *MWK Lacks Standing to Assert Its Tort and Derivative Tort Claims.*

For similar reasons, MWK also lacks standing to bring its fraud, tortious interference, TUTSA, and derivative civil conspiracy claims against Defendants.

MWK alleges that it was fraudulently "induce[d] … to provide [Jowers] advance payments and loans." *See* Amended Petition ¶ 43. But the actual agreements state that MWK did not provide Jowers with advances or loans—Counsel Unlimited, LLC and/or Recruiting Partners GP, Inc. did. [ECF Doc. No. 1-3 at 53, 59, 76 (Ex. 3); *id.* at 101, 105, 106 (Ex. 4)]. Similarly, MWK alleges that "Jowers misrepresented the need for more money … claiming he had placed sufficient candidates with future start dates to provide security for all outstanding loans … ." *Id.* ¶ 43. Because Jowers was employed only by Kinney Recruiting, LLC and because he allegedly received loans under contracts with Counsel Unlimited, LLC and/or Recruiting Partners GP, Inc., not MWK, MWK lacks standing to bring this fraud claim because it is based on alleged representations related to loan agreements to which MWK is not a party. And, MWK itself *never paid* Jowers any of these alleged amounts, so it cannot sue to collect them. Jowers Decl. ¶ 4.

Similarly, the TUTSA claim alleges that "[a]ll MWK employees involved in the development or use of MWK property … have access to MWK's other confidential information." *Id.* ¶ 49. But, MWK indisputably never employed Jowers—Kinney Recruiting, LLC did. Jowers Decl. ¶ 4. Thus, the information that MWK is describing—assuming it was really a trade secret in the first place (it wasn't)—must have belonged to Kinney Recruiting, LLC, not to MWK itself.

The same is true as to the tortious interference claims. The alleged contracts that form the basis for those claims are "the [Employment] Agreements [MWK] entered into with Jowers and Vinokurova," unspecified relationships with clients, and "contractual relations with [unspecified] existing and prospective candidates." Amended Petition ¶ 59. But all of those items were exclusively associated with Kinney Recruiting, LLC, not MWK. *See* Jowers Decl. ¶ 4.

In sum, MWK cannot assert any of these claims because all of the interests at issue belong to other parties. Therefore, it lacks standing to bring any of its alleged claims.

## B. The Court Lacks Personal Jurisdiction Over Defendants.

### 1. Defendants Are Not Subject to the Court's General Jurisdiction.

Defendants do not have the necessary contacts with Texas to permit the Court to exercise general jurisdiction over them. The Amended Petition does not allege and Defendants certainly do not have "continuous and systematic" contacts with Texas sufficient to render them "essentially at home" in Texas. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). Under *Daimler*, an entity's place of incorporation and the principal place of business are the "paradigm … bases for general jurisdiction." *Id.* at 760 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924.

Here, Jowers is a non-resident of Texas and a citizen of Florida, where he maintains a physical address, and Legis Ventures is a foreign Hong Kong company limited by shares with its principal place of business in Hong Kong. *See* Jowers Decl. ¶¶ 5–6. The Amended Petition itself admits these basic facts. *See* Amended Petition ¶¶ 3, 5. Neither Jowers nor Legis Ventures has any

place of business, office, or other facility in Texas, any assets in Texas, or any employees or agents in Texas. *See* Jowers Decl. ¶¶ 5–6.

In sum, Defendants have no presence in Texas that could support the exercise of general jurisdiction. Certainly, neither of Defendants has "continuous and systematic" Texas contacts.

>   2.  *Defendants Are Not Subject to the Court's Specific Jurisdiction.*

Additionally, Defendants are not subject to specific jurisdiction in Texas because none of MWK's alleged claims arises out of any purposeful contact by Defendants with Texas.

To show specific jurisdiction, "[i]t is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010). "The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* Communications with a person in the forum, whether by phone, e-mail, or mail, are not sufficient. *See Bonner v. Triple-S Mgmt. Corp.*, 661 Fed. Appx. 820, 822–23 (5th Cir. 2016); *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360 (5th Cir. 2007). These rest "on nothing but the mere fortuity that the plaintiff happens to be a resident of the forum." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1146–47 (5th Cir. 1985).

***First***, Defendants have not taken *any* relevant action in the State of Texas. Jowers was employed in Miami, Florida by Kinney Recruiting, LLC until June 2015, when he relocated to Hong Kong to become an attorney recruiter under contract with Kinney Recruiting Hong Kong. Jowers Decl. ¶ 2. In December 2016, Jowers terminated his relationship with Kinney Recruiting Hong Kong and subsequently became an attorney recruiter with Legis Ventures. *Id.* ¶ 3. Jowers recruits candidates almost exclusively in Asia. *Id.* Since well before leaving his employment with

Kinney Recruiting, Jowers has not contacted any attorney candidate in Texas, whether on behalf of Kinney Recruiting, LLC, Kinney Recruiting Hong Kong, Legis Ventures, or otherwise, for placement anywhere, nor has he has placed a candidate at any law office in Texas. *Id.* At no relevant time was Jowers in Texas, nor did he have anything to with Texas. *See id.* ¶¶ 3, 6–8.

Similarly, Legis Ventures is a recruiting firm that primarily places candidates at large law U.S. and U.K. based law firms in their offices in Asia. *Id.* ¶ 7. It does not have, nor has it ever had, any office, facility, place of business, or operations in Texas. *See id.* ¶¶ 6–7. Further, it has never placed a candidate at any law office located in Texas, or even at any law firm that is headquartered in Texas. *Id.* ¶ 7. Nor has Legis Ventures ever recruited any attorney located in Texas for placement at any law office in Asia—it has had no phone conversations, no meetings, and no email exchanges with any attorney candidate in Texas. *See id.*

**Second**, all of the alleged actions in the Amended Petition that form the basis for MWK's claims occurred outside of Texas.

As the Amended Petition admits, Jowers was based in Miami, Florida for essentially the entire period of his employment with Kinney Recruiting, and certainly for years prior to any events relevant to this lawsuit. *See* Amended Petition ¶ 20; *see also* Jowers Decl. ¶ 8. After his relocation to Hong Kong, Jowers became an attorney recruiter under contract with Kinney Recruiting Hong Kong. Jowers Decl. ¶¶ 2, 8. While working for Kinney Recruiting Hong Kong, Jowers worked exclusively in Asia, placing candidates at the Asian offices of large U.S. and U.K. based law firms. *Id.* Since well before he relocated to Hong Kong, Jowers has not placed any candidates in Texas, and he has not recruited any candidates in Texas for placements either in Texas or outside of Texas. *Id.* Nor has Jowers had any phone conversation, meeting, or email exchange with any attorney located in Texas during that time period. *Id.*

None of the acts described in the Amended Petition occurred in Texas. Instead, at all relevant times, Jowers was either in Florida or in Asia. *Id.* ¶ 9. Jowers made all of the email communications described in paragraphs 29, 30, 31, 32, and 33 of the Amended Petition outside of Texas. *Id.* Further, all of the candidates that MWK incorrectly accuses Jowers of improperly recruiting, including those referred to in paragraphs 33, 39, and 40 of the Amended Petition, were candidates located outside of Texas; out of those candidates, only three individuals took positions at the offices of new law firms, all of which were located in Asia. *Id.* Jowers has never met with the alleged candidates referred to in paragraphs 33, 39, and 40 of the Amended Petition in Texas. *Id.* None of the funds that MWK alleges that Jowers received in paragraphs 15–23 and 32 of the Amended Petition, whether as "loans" or otherwise, were paid to Jowers in Texas or deposited in any bank account located in Texas. *Id.* All payments that Jowers received from Kinney Recruiting, LLC or Kinney Recruiting Hong Kong, if any, were made to him in Florida. *Id.* Further, even assuming that Jowers actually received confidential business information from Kinney Recruiting, LLC or access to trade secrets as alleged in paragraphs 30, 35, 36, 37, and 38 of the Amended Petition—which he disputes—Jowers would have received such information outside of Texas, such information would have concerned individuals or business operations located outside of Texas, and, given that he has not recruited any candidate in Texas or attempted to place any candidate in Texas, he could not have "used" such information in Texas. *Id.*

And, neither Kinney Recruiting, LLC, Kinney Recruiting Hong Kong, nor MWK provided Jowers with the identities of any of the candidates that MWK incorrectly accuses Jowers of improperly recruiting in paragraphs 33, 39, and 40 of the Amended Petition. *See id.* In fact, the vast majority of attorney candidates that Jowers placed while employed at Kinney Recruiting, LLC were identified exclusively by Jowers or were referred directly to Jowers, and no other employee

of Kinney Recruiting was involved, and Jowers received no information from Robert Kinney or Kinney Recruiting, LLC concerning such candidates. *Id.* Jowers did not receive any information from Robert Kinney or Kinney Recruiting concerning the candidates that are referred to in paragraphs 33, 39, and 40 of the Amended Petition; of those candidates, all were either personal friends of Jowers or were referred directly to him by personal friends. *Id.*

Similarly, Legis Ventures has never placed any candidate in Texas, or recruited any candidate located in Texas. *Id.* ¶ 10. Jowers has never taken any action on behalf of Legis Ventures in Texas. *Id.* Legis Ventures has never received any funds or payments from MWK or had any interaction with MWK of any kind, and it is not a party to any contract with MWK. *Id.* And, Jowers's ex-wife, Yuliya Vinokurova, was located in Russia and had been for a number of years when she left Kinney Recruiting and joined Legis Ventures. *Id.* ¶ 11.

For these reasons, neither Jowers nor Legis Ventures has in any way purposefully availed themselves of Texas law. To do so, they would have had to purposefully reach out and take actions *in* Texas. They didn't. Thus, the Court lacks personal jurisdiction over Defendants.

***Third***, as discussed above, MWK is not a party to *any* of the various agreements between Jowers and other entities, including Kinney Recruiting, L.P., Recruiting Partners GP, Inc., and Counsel Unlimited, LLC, referred to in and attached to the Amended Petition. Because it is not a party, assignee, or third party beneficiary of any of those agreements, it cannot rely upon any forum or venue selection clauses contained in those agreements.

Similarly, Legis Ventures has never entered into any agreement with MWK of any kind. Jowers Decl. ¶ 10. Legis Ventures is indisputably not a party to any of the alleged agreements attached to the Amended Petition. *See id.* Indeed, Legis Ventures didn't even exist at that time those agreements were allegedly entered into. *Id.* ¶ 6. It is not and cannot be bound by any

provisions in any of those alleged agreements, including any agreements related to forum or venue. For these reasons, those documents are wholly irrelevant to the question of personal jurisdiction over Legis Ventures.

**Fourth**, contrary to MWK's claim in the Amended Petition, even if MWK were a party to any of the relevant agreements, it could not rely on them because they have no provision requiring dispute resolution in Texas. On the contrary, they refer only to the "venue" for any dispute being in Travis County. Under Texas law, "[t]he distinction between a forum selection clause and a venue selection clause is critical." *Liu v. CiCi Enters., L.P.*, No. 14–05–00827–CV, 2007 WL 43816, at *2–3, (Tex. App.—Houston [14th Dist.] Jan. 9, 2007, no pet.). "A 'forum'-selection agreement is one that chooses another state or sovereign as the location for trial, whereas a 'venue'-selection agreement chooses a particular county or court within that state or sovereign." *In re Great Lakes Dredge & Dock Co., L.L.C.*, 251 S.W.3d 68, 73–74 (Tex. App.—Corpus Christi 2008, no pet.). An agreement that expressly refers to a particular "venue" is "an unambiguous venue selection clause." *See Liu*, 200 WL 43816 at *3. For these reasons, the venue selection clauses in the alleged loan documents are not forum selection clauses.

Further, Jowers's Employment Agreement requires that "the **exclusive forum** for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Florida … ." Amended Petition at 32 (emphasis added). While the same provision does refer to venue in Travis County, courts in Texas treat questions of forum selection and venue selection separately. *See Liu*, 200 WL 43816 at *3. The venue provision comes only after an express provision selecting Florida as the sole location for the resolution of disputes and is therefore subject to the foregoing clause. While this is not ambiguous on its face, the obvious reason for the slight discrepancy is that Robert Kinney—the principal officer and manager of

Kinney Recruiting, LLC, Kinney Recruiting Hong Kong, and MWK and the undisputed drafter of the provision—changed the agreement to select Florida instead of the default of Texas, but simply forgot to change this particular portion of the clause. *Cf.* Amended Petition, at 44 (Vinokurova Employment Agreement, § 13.1) (containing identical language, but selecting Texas as a forum instead of Florida). Additionally, the Employment Agreement provides that it is governed by Florida law, *see* Amended Petition at 32, which militates in favor of a finding that the parties intended for disputes to be heard in Florida. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (recognizing importance of Florida choice of law clause in determining whether personal jurisdiction was proper and holding that Court of Appeals).

And, even if the provision were ambiguous, Texas courts construe ambiguous provisions against the drafter, using it as "a tie-breaking device [] to prevent arbitrary decisions when all other methods of interpretation and construction prove unsatisfactory." *Evergreen Nat. Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 677 (Tex. App.—Austin 2003, no pet.). As the Amended Petition admits, Robert Kinney was indisputably the drafter of Jowers's Employment Agreement. *See* Amended Petition ¶ 27 ("All Kinney Recruiting employees, including Jowers and Vinokurova, are made aware of and required to agree to … Employment Contract[s]."). Thus, if the Court employs this "tie-breaking device," it must construe this provision in favor of the exclusive forum selection of Florida, particularly where that statement is much clearer than the subsequent statement concerning Travis County in the Employment Agreement.

***Fifth***, the Court's exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. MWK's claims are inextricably tied to Asia, and specifically to Hong Kong. *See* Jowers Decl. ¶ 9. Jowers is a nonresident of Texas who has lived in Florida since 2003 and who now works full time in Hong Kong. *Id.* ¶¶ 2, 5. The only specific candidates that

**DEFENDANTS EVAN P. JOWERS'S MOTION TO DISMISS—Page 15**

MWK accuses Jowers of recruiting in violation of any contractual provision were all placed at law offices in Asia. *See id.* Further, Jowers was never an employee of MWK. *Id.* ¶ 4. Legis Ventures is based in Hong Kong and has never had any operations in or other connection with Texas, let alone with respect to the allegations in this lawsuit. *See id.* ¶ 10. Ms. Vinokurova is located in St. Petersburg, Russia and has been since long before she left Kinney Recruiting, LLC. *Id.* ¶ 11. Further, *all* invoices and payments for placements in Asia were sent to and from Kinney Recruiting Hong Kong in Hong Kong, not any entity in Texas. *Id.* ¶ 4. In sum, Texas has no dog in this fight. Forcing Defendants to litigate this matter in Texas would not only upset the express agreement between Jowers and Kinney Recruiting, L.P. to litigate claims in Florida, but it would be contrary to all parties' reasonable expectations regarding the forum for resolving any disputes. Thus, it would fly in the face of traditional notions of fair play and substantial justice.

For these reasons, Defendants have no relevant contacts with Texas and have not purposefully availed themselves of Texas law. Because MWK cannot demonstrate a prima facie showing that jurisdiction is proper, the Court should dismiss all of MWK's claims.

### C. MWK Failed to Properly Serve Legis Ventures.

Despite waiting over a year to do so, MWK failed to properly serve Legis Ventures with process. For that reason, the claims against Legis Ventures must be dismissed.

Under Texas law, service of process on a "foreign corporation" may be accomplished through service on the president and each vice president of the corporation or on a "foreign entity" that is *not* a corporation, limited liability company, or partnership through service on a "governing person" of that entity. TEX. BUS. ORG. CODE § 5.225.[1] A "governing person" includes "a person

---

[1] While "foreign corporation" is not defined, "foreign" means "with respect to an entity, that the entity is formed under, and the entity's internal affairs are governed by, the laws of a jurisdiction other than this state [i.e., Texas]."

serving as part of the governing authority of the entity," and the "governing authority" means "the person or group of persons entitled to manage and direct the affairs of an entity under this code and the governing documents of the entity," but expressly excludes "an officer who is acting in the capacity of an officer." *Id.* § 1.002(35), (37).

Legis Ventures is a Hong Kong company limited by shares, which is analogous to a corporation. *See, e.g.*, *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr.*, 186 F. Supp. 3d 852, 861 (N.D. Ill. 2016). MWK's return of service as to Legis Ventures claims that the process server served "Jowers-Vargas Recruiting," a "corporation," by serving "Evan Jowers" as "Owner" at 3555 S. Ocean Dr., Hollywood, Florida 33019 [ECF Doc. No. 1-10 at 2].

However, Jowers is categorically not an agent for service of process on Legis Ventures (aka "Jowers-Vargas Recruiting"). Jowers Decl. ¶ 10. Jowers is not a president, vice president, or other officer of Legis Ventures. *Id.* Nor is he a director, manager, or other governing person of Legis Ventures. *Id.* He owns no shares or other equity interests in that entity. *Id.* He has no legal authority to direct the operations of Legis Ventures. *Id.* In fact, at the present time, Jowers is merely a contractor with Legis Ventures—not an employee. *Id.* Thus, regardless of whether Legis Ventures is considered to be a "foreign corporation" or a "foreign entity," Jowers is not a person who could be properly served on Legis Ventures's behalf.

### D. MWK Has Failed to State a Claim Upon Which Relief Can Be Granted.

#### 1. *MWK's Fraud Claim Cannot Be Granted.*

MWK's common law fraud claim must be dismissed because the Amended Petition fails to allege fraud with particularity as required by Rule 9(b) and because it is barred by the economic

---

TEX. BUS. ORG. CODE § 1.002(27). "Foreign entity" means "an organization formed under, and the internal affairs of which are governed by, the laws of a jurisdiction other than [Texas]." *Id.* § 1.002(28).

loss rule. The particularity standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Said another way, the standard requires the Plaintiff's pleading to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n. 5 (5th Cir. 1994).

Under Texas law, a fraud claim has six elements: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *E.g.*, *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n.45 (Tex. 2002).[2]

Here, the Amended Petition fails to plead these elements with particularity. At most, it vaguely alleges that Jowers said he was going on vacation and had other expenses and that he needed an advance on commissions to cover those personal expenses. *See* Amended Petition ¶ 43. This is not sufficient to answer the so-called "newspaper questions." After all, these alleged representations were made in late 2016, *see id.* ¶ 32, but the loan agreements attached to the Amended Petition are dated from early or late 2012. *Id.* at 52, 58, 77, 100. Even as alleged, Jowers cannot have plausibly used fraudulent representations to obtain advances under four-year-old loan documents that provided him with the ongoing right to obtain further advances. The professed "reason" for the advances was patently irrelevant. And the Amended Petition even fails to

---

[2] Arguably, because all of the relevant alleged actions took place in Hong Kong, Hong Kong law applies. However, for purposes of the Texas law claims alleged in the Amended Petition, Defendants will discuss Texas law.

plausibly allege that the representations were false—in fact, it implicitly admits that Jowers went on the vacation he described. *See id.* ¶ 43. The fact that an advance was made and used for the purpose for which it was requested is not transformed into a fraudulent representation just because Kinney now wishes he had withheld the advance.

Additionally, the fraud claims fail to specifically identify how MWK supposedly relied on Jowers's "vacation representations." Instead of specific actions and amounts, MWK merely alleges that it made "loans ($51,000)" and unspecified advances of salary and commissions to Jowers. *See id.* ¶¶ 32 & 44. This is not particularized—it is merely a generalized allegation of payments. To plead reliance with particularity, MWK must specifically allege the advances that were made, the dates on which they were made, the amounts of those advances, and what it believed each advance would be used for. Without such allegations, its fraud claim doesn't even show that the advances were actually made *after* the alleged representations.

Further, the fraud claim is barred by the economic loss rule. "Under the economic loss rule, if a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain a tort action against a defendant." *Sterling Chemicals, Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "In general, the rule 'precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.'" *Levco Const., Inc. v. Whole Foods Market Rocky Mountain/Sw. L.P.*, 2017 WL 3429939, at * (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet.) (quoting *Chapman Custom Homes v. Dallas Plumbing*, 445 S.W.3d 716, 718–19 (Tex. 2014) (per curiam)). "In deciding whether the economic loss rule applies in this case, [the court] examine[s] the source of the defendant's duty and the nature of the claimed injury." *Id.* The essence of the economic loss rule is that using a fraud claim

to duplicate a breach of contract claim for the purpose of obtaining punitive or other tort damages is improper. *See, e.g.*, *Spring Street Apts. Waco, LLC v. Phila. Indem. Ins. Co.*, No. 6:16-cv-315-RP-JCM, 2017 WL 5244285, at *3–4 (W.D. Tex. Apr. 5, 2017) (dismissing fraud claim as barred by economic loss rule due to nature of remedy requested and source of duty sounding only in contract).

Here, it is beyond dispute that the alleged fraud damages and alleged duty to MWK flow exclusively from a contractual relationship. *See id.* ¶¶ 32 (referring to "additional advanced pay loans"), 44 ("MWK … rel[ied] on Jowers's false representations and provided advance salary and commission draws to Jowers.") & 61 (discussing loans under the agreements attached to the Amended Petition). Thus, either the advance payments were made under the loan agreements attached to the Amended Petition, or they were made as part of a separate contractual arrangement that they would be repaid in future.[3] Either way, the failure to repay advances of salary and commissions under a written agreement is exclusively the subject matter of the law of contracts, not tort. For these reasons, the economic loss rule bars MWK's claim for fraud. Its sole remedy—if it had standing to bring such a claim—would be for breach of contract.

> *2.  MWK Fails to State a Claim for Breach of Restrictive Covenants.*

MWK has failed to state a claim for breach of any restrictive covenants in Jowers's Employment Agreement.

The Employment Agreement, which is between Jowers and *Kinney Recruiting, L.P.*, a company for which he has never worked, is governed by Florida law. Under Florida law, restrictive covenants, including non-solicitation and confidentiality provisions like the ones in the

---

[3] The fact that it is unclear what contract the alleged advances were made under demonstrates that the fraud claim has not been pleaded with the required specificity.

Employment Agreement, are considered under a comprehensive statutory scheme. Under the statute, restrictive covenants are enforceable if: (i) they are reasonable in time, area, and line of business, and (ii) the person seeking enforcement *pleads* and *proves* that a legitimate business interest justifies the restrictive covenant. FLA. STAT. ANN. § 542.335(1), (1)(b). "Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." *Id.* § 542.335(1)(b).

Here, the Amended Petition fails to plead facts that would, if they were true, prove that the restrictive covenants are enforceable.

***First***, Jowers relocated from the Miami area to Hong Kong in June 2015. *See* Amended Petition ¶¶ 20–22, 24. He became a representative of Kinney Recruiting Hong Kong and he ceased working for Kinney Recruiting, LLC in the United States. *See id.* This was more than a year prior to the events set forth in the Amended Petition. Because, by its terms, the non-solicitation covenant only lasts for one year after the end of Jowers's employment (with Kinney Recruiting, L.P., which ironically never employed him), on its face it was no longer valid in December 2016 and onward when the alleged "solicitations" took place.

***Second***, the Amended Petition does not plead any specific legitimate business interests. While it does refer generically to trade secrets and confidential information, these are discussed only in conclusory terms, such as Jowers having vague "access to all plans and documentation." *Id.* ¶ 26. However, the actual allegations in the Amended Petition reveal that Kinney did not generally put Jowers in contact with candidates; rather, Jowers independently obtained referrals— hence the large commissions he received for those placements. *Id.* ¶¶ 25–26. The Amended Petition makes no attempt to argue otherwise. Similarly, the only concrete information that it claims Jowers actually obtained are the names of six individual attorney candidates, each of

whom—the Amended Petition does not dispute—Jowers personally knew or was introduced to independently of Kinney, insisted on working with Jowers regardless of whether he was with Kinney Recruiting Hong Kong or otherwise, and that had no ties or contact with Kinney Recruiting Hong Kong itself and certainly not with any attorney recruiters in Texas, such as Robert Kinney. *See id.* ¶ 33 & Ex. 8. MWK cannot have had any legitimate interest in information it did not provide to Jowers, particularly where the identities of attorneys who may be candidates and the names of large law firms themselves are hardly secret; indeed, large law firms advertise their lawyers on a nearly constant basis and virtually always disclose open positions and take referrals of candidates from a large number of different recruiters.

**Fourth**, any argument of legitimate business interests is belied by the fact that Kinney waited more than one year—*i.e.*, beyond the final date on which the non-solicitation covenant would have allegedly expired—to actually serve Jowers with the instant lawsuit. In fact, MWK's Original Petition in this suit sought injunctive relief, but that request was never even set for hearing and was later dropped from the Amended Petition. [ECF Doc. No. 1-2 at 29–32 (Original Petition ¶¶ 58–65); ECF Doc. No. (State Court Docket)]. There are no indications of ongoing attempts to serve Jowers; service attempts only moved forward with the Travis County court put the case on notice for dismissal for want of prosecution. [*See* ECF Doc. No. 9-1 at 2]. Such conduct contradicts any claim that MWK had actual business interests at stake sufficient to warrant restrictive covenants. Moreover, MWK is not a party to the Employment Agreement, and regardless of whatever interests Kinney Recruiting, L.P. supposedly had, MWK cannot use such interests to support the covenant. [*See* ECF Doc. No. 1-3 at 28].

**Fifth**, the confidentiality restrictions and non-solicitation covenants are not reasonable as to time. The non-solicitation covenants last for a period of 1 year after the termination of Jowers's

employment. [*See* ECF Doc. No. 1-3 at 32 (Petition, Ex. 1 §§ 8.1, 8.2]. The confidentiality restriction essentially lasts forever. [*Id.* (Petition, Ex. 1 § 7.2)]. Under the Florida statutory scheme, a restrictive covenant sought to be enforced against a former employee (other than in the sale of a part of a business) that lasts for more than 2 years is *presumptively* unreasonable. FLA. STAT. ANN. § 542.335(1)(d)(1).[4] Only if the covenant lasts for 6 months or less is it presumptively reasonable. *Id.* As the confidentiality covenant contains no time limit, it is presumptively unreasonable and is not enforceable under Florida law, particularly given the lack of any allegation in the Amended Petition that a covenant of unlimited duration is necessary. Further, with a one-year duration, the non-solicitation covenant is not entitled to any presumption, implying a higher level of scrutiny. Under the facts alleged in the Amended Petition, Jowers did not have access to any actual confidential information or trade secrets that would support a covenant of any duration, must less one year. Thus, all of the restrictive covenants in the Amended Petition are overbroad and unenforceable as written.

3. *MWK Fails to State a Claim Under TUTSA.*

MWK should not be permitted to proceed on its claim under TUTSA for alleged misappropriation of trade secrets because it does not plausibly allege that any actual trade secrets were misappropriated.[5]

A cause of action under TUTSA requires proof that (i) the plaintiff owned a trade secret; (ii) that the defendant misappropriate a trade secret; and (ii) that the misappropriation caused injury. TEX. CIV. PRAC. & REM. CODE §§ 134A.002(1), (3), (6), 134A.004(a). A "trade secret"

---

[4] As discussed below, the Amended Petition doesn't plausibly allege that MWK had any trade secrets.

[5] As with MWK's other claims, the Amended Petition implausibly assumes that the supposed trade secrets at issue belonged to MWK, as opposed to Kinney Recruiting Hong Kong or Kinney Recruiting, LLC. As stated above, MWK lacks standing to bring this claim.

means "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers that: (A) derives independent economic value … from not being generally known to, and not being readily ascertainable by proper means by, other persons … and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* § 134.002(6).

Here, the Amended Petition does not allege that Jowers obtained or used any trade secrets as that term is defined in the statute. At most, the Amended Petition alleges that Jowers spoke to six candidates and solicited a single employee, his ex-wife Yuliya Vinokurova. *See* Amended Petition ¶¶ 33–34. This is not sufficient information to constitute trade secrets. The names of a mere six attorneys—all of whom the Amended Petition implicitly admits were identified as potential candidates by Jowers himself, not by Kinney Recruiting Hong Kong—do not constitute trade secrets. *See* Amended Petition at 117 ("These persons all asked me to make sure I am representing them and leave no chance to the possibility that I would lose representation after leaving Kinney.") (describing how the six leads were identified, including several personal friends of Jowers). The Amended Petition does not allege that Jowers took a *list* of candidates, only that he contacted a mere six individuals, each of whom specifically asked him to continue representing them. *See id.* Further, it is extraordinarily overreaching for MWK to claim that it had a protectable interest in the identity of Jowers's own ex-wife, whom Jowers introduced to Robert Kinney in the first place.

Further, MWK's allegations are insufficient to establish that this information was not generally known or readily ascertainable by other persons. To the contrary, attorneys at large law firms are easily identifiable by their website biographies and prevalence in the legal press. Indeed, large law firms often mass canvass legal recruiters with requests for referrals to fill open positions.

Further, the only six specific candidates referenced in the Amended Petition either made direct contact with Jowers or, in the case of four of the six individuals, were actually friends of Jowers or put directly in contact with him through friends. [*See* ECF Doc. No. 1-3 at 118]. MWK does not allege any facts that contradict these statements, and it cannot plausibly claim that the identity of attorneys referred directly to Jowers, rather than being submitted through MWK itself, constituted its trade secrets. Finally, there are no allegations that the identity of these individuals were the subject of reasonable efforts to maintain their "secrecy" or even that they were "secret" at all. *See id.* ¶¶ 49–53.

For these reasons, the Amended Petition does not establish the basic requirements of the most essential element of a TUTSA claim—that a protectable trade secret actually existed.

### 4.  *MWK Has No Claim for Tortious Interference.*

MWK's tortious interference claims fail because it makes only conclusory statements in support.

To establish a claim for tortious interference with contract, the plaintiff must show: (1) a contract subject to interference exists; (2) the alleged act of interference was willful and intentional; (3) the willful and intentional act proximately caused damage; and (4) actual damage or loss occurred. *E.g.*, *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App.—Waco 2006, pet. denied). To be willful, the interfering party must have had actual knowledge of the contract or relationship and the plaintiff's interest. *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472 (5th Cir. 2008) (applying Texas law)

As to prospective contractual relations, the plaintiff must show: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring; (3) the defendant

did such act with a conscious desire to prevent the relationship from occurring, or it knew that the interference was certain or substantially certain to occur as a result of the defendant's conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *Id.* "Independently tortious" means conduct that would violate some other recognized tort duty. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). Further, there must be a reasonable probability that the plaintiff would have entered into a contract but for the interference, which means more than mere negotiations. *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403–04 (5th Cir. 2008) (applying Texas law).

Here, the Amended Petition fails to state either of these claims. In particular, it generically argues that "[Legis Ventures] intentionally and willfully interfered with … the rights of MWK Recruiting … under the [Employment] Agreements." Amended Petition ¶ 58. However, it fails to allege an affirmative act by Legis Ventures to interfere with the terms of the agreements. Merely retaining Jowers or Vinokurova as attorney recruiters is not sufficient. The Amended Petition would need to allege an *willful act* of *interference* (e.g., specifically directing Jowers to contact candidates that Legis Ventures knew had *exclusivity* agreements contracts with MWK for the actual purpose of inducing them to breach). There are no such allegations in the Amended Petition. *See id.* ¶¶ 33, 39, 58–59.

With respect to clients, MWK merely alleges that "Jowers, Vinokurova, and Jowers/Vargas have … interfered with contractual relations between MWK and its clients … and prospective candidates." *Id.* ¶ 59. These conclusory, threadbare accusations are just attempts to throw out claims in the hope that something sticks. The Amended Petition does not ever allege that MWK had actual *contact* with any specific candidate, let alone facts that it would show the candidate was close to entering a contractual agreement with MWK. Similarly, with respect to clients, MWK

does not actually allege that any law firm had a contract or was actually going to enter into a contract with MWK for any placement, including with respect to the only named firm in the pleading. *See id.* ¶ 39.

Further, with respect to prospective contractual relations, the Amended Petition doesn't allege any independently tortious conduct. *Id.* ¶ 59 Instead, it simply argues that Defendants "interfered with" contractual relations with unidentified "prospective candidates." *Id.* There is no allegation of an independent duty in tort to MWK. This conclusory allegation and is not sufficient to state a claim.

### 5.  *MWK's Conspiracy Claim Fails.*

MWK's civil conspiracy claim fails for two reasons.

***First***, to establish a claim for civil conspiracy, a plaintiff must establish the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Apani Sw., Inc. v. Coca–Cola Enters., Inc.*, 300 F.3d 620, 635 (5th Cir. 2002) (applying Texas law). However, the Amended Petition fails to allege these elements. Instead, it merely alleges that all of the Defendants have "embarked upon a [] scheme to conspire to tortuously [sic] to interfere with MWK's existing and prospective contractual relationships" and "to misappropriate MWK's trade secrets." Amended Petition ¶ 55.

These conclusory statements are insufficient to state a claim for joint and several liability for conspiracy. There is no allegation of a meeting of minds or that any individual defendant took an *unlawful*, over act in furtherance of the conspiracy. Instead, MWK is trying to use this claim to lump all three defendants together for purposes of liability. While the Amended Petition implies that Jowers spoke to a handful of individuals while working with Legis Ventures, it does not

establish that Legis Ventures took any unlawful, overt action to actively assist Jowers. *See id.* ¶¶ 30–31, 58–59. (And the third defendant, Vinokurova, is scarcely mentioned in the entire Petition). *See id.* ¶¶ 16, 34. The Amended Petition does not even allege all five elements of a conspiracy claim, much less facts to support each element.

**Second**, under Texas law, civil conspiracy is a derivative tort for imposing joint and several liability and is not an independent claim for damages. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (applying Texas law). Thus, "[i]f a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Id.* A conspiracy claim cannot be based on breach of contract because it's not a tort. *See, e.g., Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003) (applying Texas law).

For the reasons set forth above, MWK has failed to set forth any viable tort claim, including for common law fraud, under TUTSA, or for tortious interference.

### 6. The "Loans" Breach of Contract Claim is Devoid of Content.

MWK's alleged breach of contract claims for the "Jowers Line of Credit" and the "2012 Forgivable Loan" fails to state a claim because it does not even allege the elements of a breach of contract claim.[6]Amended Petition ¶ 61. The Amended Petition simply alleges that certain "balances" exist on these items, but it alleges nothing further. *Id.* In fact, the contracts are barely described. *Id.* ¶¶ 18–19.

This is not enough. MWK doesn't even allege all four individual elements of a breach of contract claim. *See id.* ¶ 61. A breach of contract claim requires more detail, particularly where these are revolving or declining loans with varying balances. MWK's alleged facts don't show that

---

[6] Again, the Amended Petition does not allege any facts to show that MWK has standing to bring this claim.

the balance was correctly calculated or that payments have been applied according to the terms. It merely alleges that the balances are outstanding. The Court should dismiss this claim.

### 7. *Exemplary Damages Are Not Available.*

Finally, the Amended Petition does not allege an adequate factual basis for the imposition of exemplary damages. Under Texas law, exemplary or punitive damages may *only* be awarded for a tort claim upon a showing of clear and convincing evidence of fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a).

The Amended Petition does not allege sufficient conduct to permit the recovery of exemplary damages. As discussed above, MWK's fraud claim is implausible and barred by the economic loss rule, so those allegations cannot support the recovery of exemplary damages. Even if MWK could proceed on any of its other tort claims, it only alleges that Defendants' conduct was "willful and intentional" or "in conscious disregard of MWK's rights." Amended Petition ¶ 63. This neither alleges the standard of fraud or malice required by Section 41.003, nor satisfies the requirement to plead facts showing that MWK is entitled to this relief.

Further, as to the TUTSA claim, the Amended Petition alleges only that "[b]y Jowers's admission" the supposed misappropriation was "willful" and "done with the intent of harming Kinney Recruiting," but this is belied by the actual content of the email attached as Exhibit 8 to the Amended Petition. [ECF Doc. No. 1-3 at 118]. No reasonable factfinder could review this email and Jowers's alleged conduct of speaking to six individual attorney candidates—whom he personally knew or were referred directly to him—and determine that the conduct rose to the level of malice. And, finally, because the underlying TUTSA claim fails, by extension so does any request for exemplary damages associated with such claim.

*8.  Attorneys' Fees*

Finally, the Amended Petition insupportably requests an award of attorneys' fees under TUTSA. For the same reasons set forth with respect to exemplary damages, the conduct alleged in the Amended Petition—minus MWK's use of inflammatory adjectives—does not rise to the level of "willful[] and malicious[]." *See id.* ¶ 65. Further, because the TUTSA claim fails, the Court should also dismiss MWK's request for attorneys' fees under that statute.

## CONCLUSION

For the reasons set forth above, the Court should dismiss all of MWK's claims against Defendants under Rule 12(b)(1), 12(b)(2), and 12(b)(6), and additionally against Legis Ventures under Rule 12(b)(5). Defendants also request all further relief to which they may be entitled.

Dated: June 8, 2018.                    Respectfully submitted,

                                        By:    /s/ Marc D. Katz
                                            Marc D. Katz
                                            State Bar No. 00791002
                                            marc.katz@dlapiper.com
                                            James C. Bookhout
                                            State Bar No. 24087187
                                            james.bookhout@dlapiper.com
                                            **DLA Piper LLP (US)**
                                            1717 Main Street, Suite 4600
                                            Dallas, TX 75201
                                            Telephone: (214) 743-4500
                                            Facsimile:  (214) 743-4545

                                        **COUNSEL FOR DEFENDANTS**
                                        **EVAN P. JOWERS AND LEGIS**
                                        **VENTURES (HK) COMPANY LIMITED**


                            **<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that, on June 8, 2018, a true and accurate copy of the foregoing document was served via the Court's CM/ECF facilities and via certified mail, return receipt requested to all counsel of record.

                                         /s/ James C. Bookhout
                                        James C. Bookhout