# J.D. POWER

10/16/2025

**J.D. POWER Used Cars/Trucks**

National Bankruptcy Services, LLC

14841 Dallas Parkway, Suite 300
Dallas, TX 75254
972-643-6612
Joshua.Priddy@NBSDefaultServices.com

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2023 Audi Q5 Utility 4D Sportback S-Line Prestige 45 AWD 2.0L I4 Turbo Hybrid |
| Region: | Southeastern |
| Period: | October 16, 2025 |
| VIN: | WA16AAFY5P2020845 |
| Mileage: | 42,500 |
| Base MSRP: | $51,000 |
| Typically Equipped MSRP: | $61,490 |
| Weight: | 4,178 |

## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly Used** | | | | |
| Rough Trade-In | $29,675 | N/A | $900 | **$30,575** |
| Average Trade-In | $31,500 | N/A | $900 | **$32,400** |
| Clean Trade-In | $33,000 | N/A | $900 | **$33,900** |
| Clean Loan | $29,700 | N/A | $900 | **$30,600** |
| Clean Retail | $36,775 | N/A | $1,000 | **$37,775** |
| **Weekly Auction** | | | | |
| Low | $28,550 | N/A | N/A | **$28,550** |
| Average | $31,150 | N/A | N/A | **$31,150** |
| High | $33,775 | N/A | N/A | **$33,775** |
| **Weekly Used** | | | | |
| Rough Trade-In | $29,325 | N/A | $900 | **$30,225** |
| Average Trade-In | $31,150 | N/A | $900 | **$32,050** |
| Clean Trade-In | $32,650 | N/A | $900 | **$33,550** |
| Clean Loan | $29,400 | N/A | $900 | **$30,300** |

# J.D. POWER

10/16/2025

**J.D. POWER Used Cars/Trucks**

|  | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Clean Retail | $36,425 | N/A | $1,000 | **$37,425** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

|  | Trade-In/Loan | Retail |
|---|---|---|
| Navigation System | w/body | w/body |
| Black Optic Sport Pkg. [VIN Precision+] | $900 | $1,000 |
| Cooled Front Seats | w/body | w/body |

**LAW-AFS-UCL-LA-eps-143/18**

AFS Sequence: [redacted]

# CLOSED END MOTOR VEHICLE LEASE
(WITH ARBITRATION PROVISION)

Lease Date: 09/22/2022

| Lessor Name and Business Address | Lessee Name and Address | Co-Lessee Name and Address |
|---|---|---|
| AUDI NEW ORLEANS<br>3400 N CAUSEWAY BLVD<br>METAIRIE, LA 70002 | EVAN P JOWERS<br>14909 VENOSA CIRCLE<br>JACKSONVILLE FL 32258<br>Parish: DUVAL | N/A<br>Parish: N/A |

| Lessee Billing Address (if different than above) | Vehicle Garaging Address (if different than above) |
|---|---|
| N/A | N/A<br>Parish: N/A    Principal Driver: (if business use) N/A |

In this Lease, "you" and "your" mean the lessee and co-lessee. "We," "us" and "our" mean the Lessor named above, and any assignee of this Lease.

☑ If this box is checked, Lessor will assign this Lease and sell the vehicle to **VW Credit Leasing, Ltd.** ("Assignee") and **VW Credit, Inc.** helped arrange this Lease.

The terms, conditions, and disclosures in this Lease govern your Lease with us. Each of you who signs the Lease is jointly and severally (solidarily) liable to us for all Lease obligations. You are leasing the Vehicle described below (the "Vehicle") from us. You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease. In this Lease, "e" means an estimate. The Consumer Leasing Act Disclosures shown below are also terms of this Lease. You are leasing the Vehicle described below and have no ownership rights in the Vehicle unless you exercise your purchase option.

**Monthly Payment Lease:** If your payment schedule shows monthly scheduled payments in Item 3A, your Lease is a monthly payment lease.
**Single Payment Lease:** If your payment schedule shows a single scheduled payment in Item 3B, your Lease is a single payment lease.

### 1. The Vehicle

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | Odometer | Primary Use |
|---|---|---|---|---|---|---|---|
| NEW | 2023 | AUDI | Q5 | SD | WA16AAFY5P2020845 | 7 | Personal, unless otherwise indicated below ☐ business ☐ agricultural |

### CONSUMER LEASING ACT DISCLOSURES

**2. Amount Due at Lease Signing or Delivery** (Itemized in Item 6) $ 1378.00

**3. Scheduled Payments**
A. Your first monthly payment of $ 1370.23 is due on 09/22/2022, followed by 35 monthly payments of $ 1370.23, due on the 22nd of each month.
B. Your single payment of $ N/A is due on N/A.
C. The Total of your Scheduled Payments is $ 49328.28.

**4. Other Charges** (not part of your scheduled payment)
A. Disposition fee (if you do not purchase the Vehicle and we do not waive the fee under Item 25(f)) $ 495.00
B. N/A  $ N/A
C. N/A  $ N/A
D. Total  $ 495.00

**5. Total of Payments** (The amount you will have paid by the end of the Lease) $ 49831.05
(2 + 3C + 4D − 6A3 − 6A4 − 6A5)

### 6. Itemization of Amount Due at Lease Signing or Delivery

**A. Amount Due at Lease Signing or Delivery:**
1. Capitalized cost reduction $ 7.77
2. Taxes on capitalized cost reduction $ N/A
3. First monthly payment $ 1370.23
4. Single scheduled payment $ N/A
5. Refundable security deposit $ 0.00
6. Lease acquisition fee $ N/A
7. Title fees $ N/A
8. License and registration fees $ N/A
9. Sales/use tax $ N/A
10. N/A $ N/A
11. N/A $ N/A
12. N/A $ N/A
13. Total $ 1378.00

**B. How the Amount Due at Lease Signing or Delivery will be paid:**
1. Net trade-in allowance $ 1378.00
2. Rebates and noncash credits $ N/A
3. Amount to be paid in cash $ N/A
4. Other N/A $ N/A
5. Total $ 1378.00

### 7. Your scheduled payment is determined as shown below:

A. **Gross capitalized cost.** The agreed upon value of the Vehicle ($ 63620.00) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). $ 71838.25
B. **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. − $ 7.77
C. **Adjusted capitalized cost.** The amount used in calculating your base scheduled payment. = $ 71830.48
D. **Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base scheduled payment. − $ 41723.50
E. **Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term. = $ 30106.98
F. **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts. + $ 15779.70
G. **Total of base scheduled payments.** The depreciation and any amortized amounts plus the rent charge. = $ 45886.68
H. **Lease payments.** The number of payments in your Lease. ÷ 36
I. **Base scheduled payment.** = $ 1274.63
J. **Sales/use tax (e).** + $ 95.60
K. **Total Scheduled Payment.** = $ 1370.23

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of **7,500** miles per year at the rate of $ **0.25** per mile.

**9. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for $ **41723.50** plus a purchase option fee of $ **N/A**. The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

**10. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

NOTICE: ALL PAGES OF THIS LEASE CONTAIN IMPORTANT TERMS AND CONDITIONS, INCLUDING AN ARBITRATION PROVISION. THE TERMS AND CONDITIONS ON ALL PAGES ARE PART OF THIS LEASE.

Lessee Initials X _EPJ_  Co-Lessee Initials X __N/A__

:00 pm
ge 1 of 5

**11. The Trade-In Vehicle**

Year: 2020
Make: AUDI
Model: S4

| | | |
|---|---|---|
| A. Gross Amount of Trade-In Allowance | $ | 47100.00 |
| B. Prior Credit or Lease Balance | − $ | 45722.00 |
| C. Net Trade-In Allowance (If less than 0 then enter 0) | = $ | 1378.00 |

**12. Itemization of Gross Capitalized Cost**

| | | | | | |
|---|---|---|---|---|---|
| A. Agreed upon value of the Vehicle: | $ | 63620.00 | J. N/A | $ | N/A |
| Other amounts included in the gross capitalized cost: | | | K. N/A | $ | N/A |
| B. Taxes | $ | N/A | Optional Products and Services: | | |
| C. Title, license, and registration fees | $ | 140.25 | L. SERVICE CONTRACT | $ | 1475.00 |
| D. Lease acquisition fee | $ | 895.00 | M. AUDI CARE | $ | 1399.00 |
| E. Documentation fee | $ | 425.00 | N. KEY REPLACEMENT | $ | 795.00 |
| F. Prior credit or lease balance | $ | N/A | O. DENT 995.00 / WINDSHLD 1299.00 | $ | 2294.00 |
| G. N/A | $ | N/A | P. PERMA PLATE (INT/EXT) | $ | 795.00 |
| H. N/A | $ | N/A | Q. N/A | $ | N/A |
| I. N/A | $ | N/A | R. Total Gross Capitalized Cost: | $ | 71838.25 |

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS LEASE, WE MAY RETAKE THE VEHICLE.**

**13. Official Fees and Taxes.** The total amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included in your scheduled monthly payments or assessed otherwise: $ 3441.60 (e). The actual total of fees and taxes may be different than this estimate based on changes in the tax or fee rates and the value of the Vehicle when the fee or tax is determined.

**14. Late Payments.** For any payment not received within 10 days of the date it is due, you will pay a late charge of: 5% of the unpaid amount of the payment or $25, whichever is greater.

You will not have to pay a late charge if the only amount that is late is a late charge you owed for an earlier late payment.

**15. Returned Payment and Unpaid Fines and Fees.** You will also pay a returned instrument charge of $ 25.00 for any check, instrument or electronic funds debit that is returned unpaid for any reason, if the law allows it. If you don't pay a fine, penalty, toll, or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus a $ 25.00 Administrative Fee per incident, if the law allows it.

**16. Warranties.** The Vehicle is subject to the manufacturer's standard warranty, unless this box is checked: ☐

☐ If this box is checked, the Vehicle is subject to the following express warranties:
N/A
N/A
N/A

Warranty papers that are separate from this Lease state any coverage limits.
The law gives you a warranty that the Vehicle conforms to the description in this Lease. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.** Except as prohibited by law, the following sentence applies. **WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES AGAINST VICES AND DEFECTS AND FOR PEACEFUL POSSESSION.**

If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we enter into a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the warranty or service contract.

**17. OPTIONAL PRODUCTS AND SERVICES**

You are not required to buy any of the following optional products and services to enter into the Lease. The term of any product or service will be the Lease term, unless a different term is shown below. If you decide you want to purchase an optional product or service, review the terms of the contract that describe the product or service before you initial below. A completed copy of the contract will be given to you as soon as practicable. By initialing below, you indicate that you want to buy the optional products and services indicated. If the cost shown below is not shown as part of the Itemization of Amount Due at Lease Signing or Delivery (Item 6), it has been added to the Gross Capitalized Cost (Item 12).

| Optional Product or Service | Coverage | Price | Name of Provider | Approval |
|---|---|---|---|---|
| SERVICE CONTRACT | 36 | 1475.00 | SERVICE CONTRACT | Lessee Initials EPO |
| MAINTENANCE PLAN | 48 / 0 | 1399.00 | AUDI CARE | Lessee Initials EPO |
| KEY REPLACEMENT | 36 MONTHS | 795.00 | KEY REPLACEMENT | Lessee Initials EPO |
| DENT PROTECTION | 36 MONTHS | 995.00 | DENT PROTECTION | Lessee Initials EPO |
| WINDSHIELD PROTECTION | 36 MONTHS | 1299.00 | WINDSHIELD PROTECTION | |
| PERMA PLATE (INT/EXT) | 36 MONTHS | 795.00 | PERMA PLATE (INT/EXT) | Lessee Initials EPO |

**18. EXTRA MILEAGE**

You are purchasing N/A extra miles per year at a rate of $ N/A per mile. The extra miles are included in the amount shown in Item 8 "Excessive Wear and Use." ☐ If this box is checked, you will receive a credit for unused purchased extra miles if this Lease ends on or after the start of the last monthly period (see Item 20A). This credit will equal N/A cents per purchased unused mile times each mile under N/A , up to the N/A total extra miles you purchased. You will not receive this credit for unused purchased miles if this Lease ends before the start of the last monthly period, the Vehicle is destroyed, you purchase the Vehicle, or you are in default.

**19. TYPES AND AMOUNTS OF REQUIRED INSURANCE COVERAGE**

You must maintain the following types and minimum amounts of insurance: $ 15,000 per person for bodily injury; $ 30,000 per accident for bodily injury; $ 25,000 per accident for property damage. If the minimum amounts of insurance required by the state in which the vehicle is garaged are higher than amounts stated in this Lease, you agree to maintain insurance that meets the minimum state requirements. You agree to maintain collision, fire, theft, and comprehensive coverage with a maximum deductible of $ 1,000 . This insurance is required in connection with this Lease. You have the option to purchase the required insurance either through existing policies of insurance coverage or through any insurance company authorized to do business in Louisiana. See Item 25(a) for additional insurance provisions. You confirm that insurance policies that meet the requirements described in this Lease are in force on the date of this Lease.

| 20. LAST MONTHLY PERIOD AND LEASE TERM | 21. HOW THIS LEASE CAN BE CHANGED |
|---|---|
| A. The start of the last monthly period for a monthly payment lease is the due date for the last monthly payment. For a single payment lease, the start of the last monthly period is the date that is one month before the scheduled lease end.<br>B. The scheduled lease term is 36 months. | This Lease contains the entire agreement between you and us relating to this Lease. Any change to the Lease must be in writing and both you and we must sign it. No oral changes are binding.<br>Lessee Signs X _____<br>Co-Lessee Signs X N/A |

**22. EXCESS WEAR WAIVER**

We will waive excess wear charges (Item 25(c)) in an amount up to $ 0.00 if, at the time this Lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to VW Credit Leasing, Ltd. or VW Credit, Inc. dba Volkswagen Credit and Audi Financial Services.

**23. DEFAULT, REPOSSESSION AND OTHER REMEDIES**

If any of the following occurs, you will be in default under this Lease: • You do not pay any payment on its scheduled due date under this Lease; • You do not pay any other amount due under this Lease when we ask that you pay it; • You provide any false or misleading information in any Lease application; • You fail to maintain required insurance; • You lose possession of the Vehicle by confiscation, forfeiture or other involuntary transfer whether or not the Vehicle is the subject of judicial or administrative proceedings; • You assign the Lease or transfer the Vehicle without our prior written permission, or attempt to do either; • You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property; • You do anything that endangers the Vehicle or your ability to pay your Lease obligations; • You fail to return the Vehicle when required to do so under this Lease; • You fail to meet any other obligation under this Lease; • You do anything the law says is a default.

If you are in default, after providing any notice and requiring any time the law requires, we may do any of the following: • End this Lease early and require you to pay the amount due at early termination; • Take any action we believe is required to protect our interest in the Vehicle (for example buying insurance) and our action will not cure your default; • Add any amounts we spend taking these actions to your Lease obligation and charge rent on the amount added, or at our option, ask you to pay these amounts right away; • If the Vehicle is equipped with electronic tracking technology, use it to find the Vehicle; • Cancel any optional products and services included with this Lease and apply any refund to your Lease obligations (you hereby instruct any provider of such products and services to pay us any refund or credit due on early cancellation); • Take (repossess) the Vehicle wherever we find it and enter any property where the Vehicle may be to do so, but only to the extent the law permits; • Sue you for damages and to get the Vehicle back; • Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law allows. We may use the license plates on the Vehicle to move it to a storage place. After repossessing the Vehicle, we will hold it free of any rights you may have under this Lease, subject to any right the law gives you to cure the default or recover the Vehicle. We may take and store any personal items that are in the Vehicle. If you do not ask for these items back, we may dispose of them as the law allows. Unless you tell us within five business days of any personal property you claim was in the Vehicle when it was repossessed, we will not be responsible for that property. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the Vehicle, attorney's fees, collection costs, and court costs. The amount of attorney's fees that you will pay will not exceed 25% of the total amount payable under the Lease.

Lessee Initials X EPO   Co-Lessee Initials X N/A



04:00 pm
Page 2 of 5

(c) **Standards for Wear and Use.** You agree to pay an excess mileage charge as indicated in Item 8 and an excess wear charge as described below unless otherwise provided in Item 22 or the scheduled lease end, minus the amount, if any, of the excess wear charge waived under Item 22. Excess wear is wear beyond the minor wear reasonably expected to result from ordinary use of the Vehicle, assuming you maintain the Vehicle as this Lease requires (Item 25(g)) and use the Vehicle as this Lease permits (Item 25(i)). The excess wear charge will be our actual or estimated cost of repairing any excess wear. (We do not have to make the repairs.) Repairs, including tires, must be made with original equipment manufacturer's parts or those of equal quality and performance. These include but are not limited to those necessary to repair or replace: • painting or lettering the Vehicle or modifying its VIN; • accessories, equipment, or parts that have been added, removed, damaged or modified (including missing keys or remote entry devices) without our prior written permission; • road damage, chips, scratches, cracks, plugs, tinting, staining, corrosion or damage to the glass, paint, body, bumpers, suspension, engine, powertrain, frame, wheels, floor coverings, seats or any other part of the interior; • mechanical or electrical malfunction, upholstery, interior or trunk/liner damage, stains or tears, dented trim or molding, or damage from water, sand, or freezing; • inoperable lights; • tires that have sidewall plugs, gouges, cuts or exposed cords or are not part of a matching set of five tires or of unequal quality to the originals (or four with a spare of quality and type as the original); • one or more tires with less than 1/8 inch of tread remaining at the shallowest point; • any condition that renders the Vehicle unsafe, incapable of passing any required inspection or makes the Vehicle run noisy, rough or unsafely; and • any other wear beyond normal wear. The failure to adequately maintain or repair the Vehicle may be considered excess wear. You will not owe a charge for excess mileage or excess wear if you purchase the Vehicle.

(d) **Security Deposit.** If you paid a security deposit this paragraph applies. Unless required by law, we do not keep the security deposit separate in a bank or earmarked on our books. We may apply some or all of the security deposit to any amounts you owe under this Lease, or, if you exercise your purchase option, to the price of the Vehicle. Any unused security deposit will be returned to you at the end of the Lease. We have no fiduciary duty to you with respect to the security deposit unless such duty is imposed by law. No interest, increase, or profit on the security deposit will accrue or be paid to you.

(e) **Option to Purchase Vehicle.** You have the option to buy the Vehicle at any time from a party designated by us. If you do, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration. Before the scheduled lease end, the price will be the Adjusted Lease Balance (see Item 24) plus the Item 9 Purchase Price minus the Item 7D Residual Value. At the scheduled lease end, the price will be the Item 9 Purchase Price. At either time, you must also pay the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 25(s)). Under this Lease, you will only be considered to have purchased the Vehicle if we assign the Vehicle's title directly to you.

(f) **Return of the Vehicle.** If you do not exercise your purchase option, you will return the Vehicle to us at a place we designate when this Lease ends. You agree to make the Vehicle available for inspection at our request. When you return the Vehicle, you must give us a completed, signed odometer disclosure statement. If you keep the Vehicle after the scheduled lease end, unless you return it within any grace period we offer, you will pay us at the beginning of each month for any part of a month you keep the Vehicle, an amount equal to:

- For a monthly payment lease, the Item 7K Total Scheduled Payment.
- For a single payment lease, the Item 7K Total Scheduled Payment divided by the number of months in the Lease Term (Item 20B).

Your payment does not permit you to keep the Vehicle unless you get our permission in advance.

(g) **Maintenance.** You will maintain the Vehicle in good working order and repair. You will pay all operating costs, such as gasoline, oil, and replacement tires. You will, at your expense, service the Vehicle according to the owner's manual maintenance schedule. If the Vehicle is recalled, you will have the recall repairs or service performed. You will use original equipment manufacturer's parts or those of equal value, quality, and performance in the maintenance and service of the Vehicle. We may but are not required to provide you with a replacement vehicle for any reason. You will maintain and keep in the Vehicle a record of all maintenance performed on the Vehicle. This maintenance record will be available to us at any time, and will be provided to us at the end of the Lease.

(h) **Registration, Parking Tickets, Tolls and Taxes.** You must keep the Vehicle currently registered. You must pay all parking tickets, tolls and traffic fines relating to the Vehicle. If you do not pay such tickets, tolls and fines, we may do so for you, and you will pay us upon demand. We may add the amount to what you owe us if you do not pay us when we make demand. You must pay when due or reimburse us **if we pay for you, all government charges, fees and taxes whether assessed on you,** us, or the Vehicle. You will not have to pay our income taxes. If you do not pay the charges, fees and taxes, and interest or penalties are assessed (unless the interest or penalties are a result of our negligence), you must pay the interest or penalties when due or reimburse us if we pay them. **You must pay personal property taxes, ad valorem, sales, use or similar taxes assessed on the Vehicle, whether such fees or taxes are billed during or after the Lease term, and whether you are billed for them by the government or whether we pay them and bill you for them or include the amount of such taxes as part of your scheduled payment.** We may change your scheduled payment if taxes change. If you don't pay a fine, penalty, toll or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus the Item 15 Administrative Fee.

(i) **Use of the Vehicle.** You will keep the Vehicle free from any liens or claims. You have the risk of loss, and are responsible for the Vehicle's damage or destruction. You will not: • Use the Vehicle illegally, improperly such as for towing that exceeds the manufacturer's towing recommendations, or for hire, such as for providing taxi services or for business purpose ridesharing; • Without our prior written consent, alter or install equipment that makes the Vehicle unsafe or unlawful to operate; • Use the Vehicle in a manner that your insurance policy prohibits or in a way that produces unusually high depreciation; • Allow unlicensed drivers to drive the Vehicle; • Use the Vehicle for more than 30 days outside the state where you originally registered the Vehicle without prior written notice to us and our prior written consent; • Take the Vehicle out of the United States without our prior written consent; • Change the Vehicle without our prior written consent. You will not let anyone else do any of these things.

(j) **Indemnification. We are not responsible for any injuries, damages, expenses or claims, including claims for attorney fees or under the strict liability doctrine, caused by the maintenance, condition, or operation or use of the Vehicle. You agree to indemnify and hold us (and our assignees, successors, agents, and insurers) harmless for all such injuries, damages, expenses and claims.**

(k) **Assignment of Returned Premiums and Other Amounts.** You ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ other amounts ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ service sold in connection with this Lease and returned or paid to us. We will use these amounts to reduce amounts you owe under the Lease. You will earn no interest, increase, or profit with respect to such property.

(l) **Your Odometer Obligations.** You will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperable, you will provide us with reasonable evidence of the Vehicle's actual mileage. If you are unable to do so, you will pay us our reasonable estimate of any reduction of the Vehicle's fair market value caused by the inability to determine the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

**Important Note:** Federal law requires you to tell us the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

(m) **Assignment and Transfer of the Vehicle.** You may not assign the Lease or transfer the Vehicle without our prior written permission. We may assign all of our rights under this Lease. Any person to whom this Lease is assigned may reassign it. Any sale and assignment by us will not be considered to change materially your duties, burden, or risk under this Lease.

(n) **Ownership.** We are the sole owners of the Vehicle including original accessories and any installed after the Lease begins. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any information or advice regarding possible tax consequences under this Lease.

(o) **Inspection.** Upon reasonable notice to you, at any reasonable place and time we choose we may inspect this Vehicle and you agree to cooperate with such inspection.

(p) **Waiver.** We may delay or refrain from enforcing any of our rights under this Lease without losing them.

(q) **Giving Notice.** Notices may be given personally or sent by first class mail. Notices mailed to us must be sent to the address shown in this Lease or as we otherwise direct from time to time. Notices shall be deemed given to us when they are personally given or actually received at our address. Notices shall be deemed given to you when they are personally given or when placed in the mail, addressed to you at your address then shown on our records, even though you might not actually receive our mailed notice. You agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period, in which case you agree that the state-required period is reasonable.

(r) **Servicing and Collection Contacts.** You agree that we as well as any third party calling on our behalf and any assignee may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we as well as any third party calling on our behalf and any assignee may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to provide us with current contact information.

(s) **Additional Amounts Due and Additional Credits.** Regardless of how this Lease ends, you will owe us the following amounts: • Any official fees and taxes related to the termination. • Any other amounts due under this Lease including any unpaid late charges or other amounts due because you failed to meet your obligations under this Lease ("Additional Amounts Due"). If this Lease ends early, we may cancel any optional insurance, maintenance, service, or other contracts included in this Lease or claim benefits under them to reduce what you owe or repair the Vehicle ("Additional Credits").

(t) **Disposition Fee Waiver.** The Item 4A Disposition Fee will be waived if, at the time this Lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to VW Credit Leasing, Ltd. or VW Credit, Inc. dba Volkswagen Credit and Audi Financial Services.

(u) **Liability Upon Termination at Scheduled Lease End or On or After the Start of Last Monthly Period.** Upon return of the Vehicle, you will pay us the total of the following amounts: • the Item 4A Disposition Fee unless this fee is waived under Item 25(t); • an excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8; • any excess wear charge (Item 25(c)); • any amounts due under Item 25(f) because you failed to return the Vehicle on time; • the Additional Amounts Due (see Item 25(s)). We will apply the Additional Credits to the amount you owe (see Item 25(s)).

(v) **NOTICE.** VW Credit Leasing, Ltd. (VWCL) has assigned to VCI Account Services, LLC its rights under this Lease to (1) acquire the Vehicle, and (2) sell the Vehicle if it is subsequently purchased from VWCL. None of VWCL's obligations have been assigned.

(w) **Settlement of Insurance Claims.** If there is any damage or loss to the Vehicle, you agree that we or our agent may settle any insurance claim or sign your name on any title or registration or on any check or draft we receive for that Vehicle damage or loss.

(x) **JURY TRIAL WAIVER. In the event of litigation, concerning any claim or dispute, whether in contract, tort, or otherwise, you and we each agree to waive any right you and we may have to a jury trial, as the law allows.**

(y) **General.** If any part of this Lease is invalid, unenforceable or illegal in any jurisdiction, the part that is invalid, unenforceable or illegal will not be effective as to that jurisdiction. The rest of the Lease will be enforceable except as provided in the Arbitration Provision, on page 5 of this Lease. This Lease is our entire agreement. We have made no promises to you not contained in this Lease. If any part of this Lease is found by a court or other dispute resolution body to be void or unenforceable, this Lease is to be read as if that part were never contained in this Lease.

Lessee Initials X __EPO__   Co-Lessee Initials X __N/A__

age 4 of 5

## 24. EARLY TERMINATION LIABILITY

When the Lease can be ended early. You may terminate the Lease early by returning the Vehicle to us and paying us your early termination liability (see below) when we ask for it.

We may end the Lease early if you are in default; the Vehicle is damaged or destroyed beyond repair, stolen or lost (a "Total Loss"); or you die and there is no surviving lessee. If we end the Lease, you must return the Vehicle to the place we designate and pay us the early termination liability (see below) when we ask for it.

**Early Termination Liability.** Unless the Vehicle is a Total Loss, forfeited, or confiscated subject to Item 25(b), we will figure your early termination liability as follows:

If this Lease ends before the start of the last monthly period (Item 20A), then:

**Monthly Payment Lease.** You will owe the sum of the following: (i) the Remaining Depreciation (see definition below); plus (ii) the Item 4A Disposition Fee unless this fee is waived under Item 25(t); minus (iii) the amount, if any, by which the Vehicle's Fair Market Wholesale Value (see definition below) exceeds the Item 7D Residual Value (the "Surplus"). If there is no Surplus, then you will also owe the lesser of: • the total of an excess wear charge (see Item 25(c)) and an excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8; or • the amount, if any, by which the Item 7D Residual Value exceeds the Vehicle's Fair Market Wholesale Value.

**Single Payment Lease.** The Base Scheduled Payment (Item 7I) paid at lease signing prepays the depreciation and any amortized amounts (Item 7E) and the rent charge (Item 7F). We will give you a credit for the amount, if any, by which the Vehicle's Fair Market Wholesale Value (see definition below) exceeds the Item 7D Residual Value (the "Surplus"), up to the amount of the Remaining Depreciation (see definition below). We will also give you a credit for the Unearned Rent Charge (see definition below). You will owe the Item 4A Disposition Fee unless this fee is waived under Item 25(t). If the Surplus exceeds the Remaining Depreciation, we will apply the excess to the Item 4A Disposition Fee, unless this fee is waived under Item 25(t). If there is no Surplus, then you will also owe the lesser of: • the total of an excess wear charge (see Item 25(c)) and an excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8; or • the amount, if any, by which the Item 7D Residual Value exceeds the Vehicle's Fair Market Wholesale Value.

In addition to the amounts described above, you will also owe us the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 25(s)).

If this Lease ends on or after the start of the last monthly period but before the scheduled lease end, we will figure your liability under Item 25(u) in the same way as we would if the Lease ended on the scheduled lease end.

**Definition of Remaining Depreciation.**

**Monthly Payment Lease.** The Remaining Depreciation is the total of the depreciation and amortized amounts in the base scheduled payments that have not yet become due on the date this Lease ends. It is figured as follows: • the Adjusted Lease Balance (see definition below); minus • the Item 7D Residual Value.

**Single Payment Lease.** The Remaining Depreciation is the total of the depreciation and amortized amounts in the Unused Base Scheduled Payment (see definition below). It is figured as follows: • the Unused Base Scheduled Payment; minus • the Unearned Rent Charge (see definition below).

**Definition of Unearned Rent Charge (Single Payment Lease Only).**

The Unearned Rent Charge is the total rent charge in the Unused Base Scheduled Payment. It is figured as follows: • the Item 7D Residual Value; minus • the Adjusted Lease Balance (see definition below).

**Definition of Adjusted Lease Balance.**

**Monthly Payment Lease.** The Adjusted Lease Balance equals the difference between: (1) The Item 7C Adjusted Capitalized Cost; and (2) all depreciation and amortized amounts in the base scheduled payments that have become due. Each Item 7I Base Scheduled Payment consists of: • a rent charge portion; and • a portion allocable to depreciation and any amortized amounts. Although the amount of your Item 7I Base Scheduled Payment does not change, different portions of each Base Scheduled Payment are allocated to • rent charge; and • depreciation and any amortized amounts. The portion of a Base Scheduled Payment that is allocated to depreciation and any amortized amounts is equal to the Base Scheduled Payment minus the rent charge for that month. We use the Constant Yield Method to figure the rent charge portion of each Base Scheduled Payment. Under the "Constant Yield Method," the rent charge for each scheduled period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it declines during the Lease term. At any given time during the Lease term, the "Balance Subject to Rent Charge" is the difference between the Item 7C Adjusted Capitalized Cost and the sum of: (i) all depreciation and amortized amounts accrued during the previous periods, and (ii) any Base Scheduled Payment paid at Lease signing or delivery. The scheduled rent charge calculations are based on the assumption that we will receive your scheduled payments on their exact due dates and that the Lease goes to its full term.

**Single Payment Lease.** The Adjusted Lease Balance at the beginning of the Lease equals: (i) The Item 7C Adjusted Capitalized Cost; minus (ii) the Item 7I Base Scheduled Payment. At the beginning of each month, the Adjusted Lease Balance increases by the rent charge for that month. We use the Constant Yield Method to figure the rent charge for each month. Under the "Constant Yield Method" the rent charge for each monthly period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it increases during the Lease term. At any given time during the Lease term, the "Balance Subject to Rent Charge" equals: (i) the Item 7C Adjusted Capitalized Cost; minus (ii) the Item 7I Base Scheduled Payment; plus (iii) all rent charges accrued during previous periods. The rent charge calculations are based on the assumption that the Lease goes to its full term.

**Definition of Fair Market Wholesale Value.** Unless you exercise your independent appraisal right (see below), the Fair Market Wholesale Value of the Vehicle is (at our option): • the price we receive for the Vehicle at disposition; • the highest offer we receive for disposition of the Vehicle; • the amount you and we agree in writing; • or the wholesale fair market value of the Vehicle.

**Definition of Unused Base Scheduled Payment (Single Payment Lease).** The Unused Base Scheduled Payment equals: (i) the Item 7I Base Scheduled Payment; divided by (ii) the number of months in the Lease Term (Item 20B); times (iii) the number of full months remaining after the date of the early termination until the scheduled lease end.

**Your Independent Appraisal Right.** To the extent your early termination liability takes into account the value of the Vehicle at termination, you may get a professional appraisal of the Vehicle's fair market wholesale value. If you do so within a reasonable time, we will use the appraised value as the Fair Market Wholesale Value. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for any appraisal. The appraisal will be binding.

## 25. OTHER TERMS AND CONDITIONS

(a) **Insurance.** For the duration of the Lease term, and until you return the Vehicle, you agree to maintain the amounts and types of primary insurance as indicated in Item 19 on page 2 of this Lease in your name. Insurance may be obtained by you from anyone reasonably acceptable to us. You must indicate us or anyone we require as an additional insured and loss payee on your policy. Your policy must state that we will be given at least 30 days' notice of any material coverage change, reduction, or cancellation. If your insurer does not pay a claim for any reason, it will mean that you have not maintained the required insurance. You will pay for any loss we incur because you do not maintain required insurance or because the insurer does not pay a claim. If you fail to obtain and maintain the required insurance, we may, if we choose, buy it for you. We may add the amount we pay for this insurance to your unpaid Lease obligations and charge rent on the amount added, or at our option, ask you to pay it right away. If we decide to buy this insurance, we may either buy insurance that covers your interest and our interest, or buy insurance that covers only our interest, unless the law requires us to buy insurance that also protects your interest. If the Vehicle is damaged, stolen, or destroyed, and money becomes available from insurance, a judgment, a settlement, or the like, we will be entitled to the money. If the Lease ends in connection with our receipt of the money or has already ended at the time we receive it, we will treat any of the money we do not use to repair the Vehicle as part of the price we received for the Vehicle at disposition, unless otherwise provided for in Item 25(b).

**NOTICE: PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

(b) **Total Loss, Forfeiture or Confiscation of Vehicle.** If the Vehicle is a Total Loss (as described in Item 24) before the scheduled end date, we may at our option agree in writing to continue this Lease and provide you with a substitute vehicle. If you and we do not agree to continue this Lease with a substitute vehicle, we will end the Lease early as described in Item 24, and you will owe the amounts described in the following paragraphs of this Item 25(b) instead of the amounts described in Item 24.

**Monthly Payment Lease.**

If we receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 19 and 25(a)), then:

We will deduct the Additional Credits (see Item 25(s)) from the Adjusted Lease Balance (see Item 24) to compute a net lease balance (the "Net Lease Balance").

If the Net Lease Balance is greater than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount of your insurance deductible; and (ii) the total amount of any deductions from the insurance settlement we receive due to past due premiums, excess mileage, prior damage or otherwise related to the condition of the Vehicle before the Total Loss occurred.

If the insurance settlement we receive is greater than the Net Lease Balance, you will receive a credit for any excess up to the amount of the Additional Credits deducted above.

If we do not receive a settlement under an insurance policy that complies with the requirements of this Lease or the Vehicle was forfeited or confiscated under governmental authority, then:

You will owe us: (i) the Adjusted Lease Balance; minus (ii) any part of your insurance deductible that you pay us; minus (iii) any settlement we receive from your insurance company; minus (iv) any amount we receive for selling the Vehicle as salvage; plus (v) if the Vehicle is returned to us, the Item 4A Disposition Fee unless this fee is waived under Item 25(t). If the amount we figure in the preceding sentence is less than zero, we will not give you a credit for that amount. We will apply the Additional Credits to the amount you owe (see Item 25(s)).

**Single Payment Lease.**

If we receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 19 and 25(a)), then:

You will receive a credit for the Unused Base Scheduled Payment (see Item 24). We will deduct the Additional Credits (see Item 25(s)) from the sum of the Adjusted Lease Balance (see Item 24) and the Unused Base Scheduled Payment to compute a net lease balance (the "Net Lease Balance"). If the insurance settlement we receive is greater than the Net Lease Balance, you will also receive a credit for the excess up to the amount of the Additional Credits deducted above.

If the Net Lease Balance is greater than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount of your insurance deductible; and (ii) the total amount of any deductions from the insurance settlement we receive due to past due premiums, excess mileage, prior damage or otherwise related to the condition of the Vehicle before the Total Loss occurred.

If we do not receive a settlement under an insurance policy that complies with the requirements of this Lease or the Vehicle was forfeited or confiscated under governmental authority, then:

You will owe us: (i) the Item 7D Residual Value; minus (ii) Unearned Rent Charge (see definition in Item 24); minus (iii) any part of your insurance deductible that you pay us; minus (iv) any settlement we receive from your insurance company; minus (v) any amount we receive for selling the Vehicle as salvage; plus (vi) if the Vehicle is returned to us, the Item 4A Disposition Fee unless this fee is waived under Item 25(t). If the amount we figure in the preceding sentence is less than zero, we will give you a credit for that amount, up to the amount of the Unused Base Scheduled Payment. We will apply the Additional Credits to the amount you owe (see Item 25(s)).

In addition to the amounts described in this Item 25(b), you will also owe us the Additional Amounts Due (see Item 25(s)). You will receive a credit for the Additional Credits only as described in this Item 25(b).

## 26. ARBITRATION PROVISION

### ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Lessor named on page 1 of this Lease is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease was executed. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee in accordance with the rules and procedures of the chosen arbitration organization. If the rules of the chosen arbitration organization do not specify how fees must be allocated, we will pay the filing, administration, service or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control.

Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover amounts you owe under this Lease, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Opt Out: If you would like to opt out of arbitration, you may send us a written notice of opt out. The notice of opt out must provide your name, a description of the leased vehicle, including vehicle identification number (VIN), and a statement that you want to opt out of the arbitration provision. The written notice must be postmarked within 15 days of the date of this Lease and sent to VW Credit Leasing, Ltd., Arbitration Opt Out, 1401 Franklin Blvd., Libertyville, IL 60048.

## 27. LESSOR'S ASSIGNMENT

Pursuant to the terms of that certain agreement between Lessor and the Assignee for the assignment of leases by Lessor to Assignee from time to time, Lessor hereby assigns all right, title and interest in the Lease and the Vehicle and rights the Lessor may have under any guaranty executed in connection with the Lease, with full powers to Assignee to collect and discharge all obligations, any guaranty and this assignment.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision, Item 26 above, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Lessee Signs X [signature]   Co-Lessee Signs X  N/A

N/A

*Rent charge may be negotiable. Lessor may assign this Lease and retain a right to receive a portion of the rent charge.*

NOTICE TO THE LESSEE: DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IN BLANK. YOU ARE ENTITLED TO A COPY OF THIS LEASE WHEN YOU SIGN IT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

YOU AGREE TO THE TERMS OF THIS LEASE. YOU ACKNOWLEDGE YOU HAVE EXAMINED THE VEHICLE, THAT THE VEHICLE IS EQUIPPED AS YOU WANT, AND THAT IT IS IN GOOD CONDITION. YOU ACCEPT THE VEHICLE FOR ALL PURPOSES OF THE LEASE. YOU UNDERSTAND THAT YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU READ ALL PAGES OF THIS LEASE, INCLUDING THE ARBITRATION PROVISION ABOVE (ITEM 26), BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED THIS LEASE.

### LESSEE SIGNATURES

Lessee Signature [signature]   Date 09/22/2022   Co-Lessee Signature  N/A   Date  N/A

Type/Print Lessee Name  **EVAN P JOWERS**   Type/Print Co-Lessee Name  N/A

Commercial Lessee  N/A   Date  N/A   By  N/A

Type/Print Name  N/A   Type/Print Title  N/A

**GUARANTY:** To induce us to lease the Vehicle to Lessee, each person who signs as a Guarantor individually guarantees the payment of this Lease. If Lessee fails to pay any money owing on this Lease, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Lessee has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Lessee more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) accept less from the Lessee than the total amount owing; or (4) otherwise reach a settlement relating to this Lease or extend the Lease. Each Guarantor acknowledges receipt of a completed copy of this Lease and guaranty at the time of signing. To the extent permitted by applicable law, Guarantor waives notice of acceptance of this Guaranty, notice of the Lessee's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Lessee.

Guarantor Signature X  N/A   Date  N/A   Type/Print Guarantor Name  N/A

Guarantor Address  N/A

### LESSOR'S ACCEPTANCE

The Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of this Lease.

Lessor Name:   **AUDI NEW ORLEANS**   By: [signature]

Assignee Name: VW Credit Leasing, Ltd.   Type/Print Name: **CHRISTOPHER M BURLEY**

Type/Print Title: **F&I MANAGER**

Lessee Initials X _____   Co-Lessee Initials X  N/A

**Mail Lien Satisfaction to:** Dept of Highway Safety and Motor Vehicles, Neil Kirkman Building, Tallahassee, FL 32399-0500

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| WA16AAFY5P2020845 | 2023 | AUDI | UT | 4079 | | 148755352 |

Registered Owner:
VW CREDIT LEASING LTD
1401 FRANKLIN BLVD
LIBERTYVILLE, IL 60048

Date of Issue  11/18/2022

**Lien Release**
Interest in the described vehicle is hereby released
By _____
Title _____
Date _____

Mail To:
VW CREDIT LEASING LTD
1401 FRANKLIN BLVD
LIBERTYVILLE, IL 60048

**IMPORTANT INFORMATION**
1. When ownership of the vehicle described herein is transferred, the seller MUST complete in full the Transfer of Title by Seller section at the bottom of the certificate of title.
2. Upon sale of this vehicle, the seller must complete the notice of sale on the reverse side of this form.
3. Remove your license plate from the vehicle.
4. See the web address below for more information and the appropriate forms required for the purchaser to title and register the vehicle, mobile home or vessel: http://www.hsmv.state.fl.us/html/titlinf.html

## CERTIFICATE OF TITLE

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| WA16AAFY5P2020845 | 2023 | AUDI | UT | 4079 | | 148755352 |

**Lien Release** Interest in the described vehicle is hereby released

| Prev State | Color | Primary Brand | Secondary Brand | No of Brands | Use | Prev Issue Date |
|---|---|---|---|---|---|---|
| | GRY | | | | PRIVATE | |

By _____
Title _____

| Odometer Status or Vessel Manufacturer or OH use | Engine Drive | Hull Material | Prop | Date of Issue |
|---|---|---|---|---|
| 7 MI 09/22/2022 ACTUAL | | | | 11/18/2022 |

Date _____

Registered Owner
VW CREDIT LEASING LTD
1401 FRANKLIN BLVD
LIBERTYVILLE, IL 60048

1st Lienholder
ELECTRONIC TITLE PRIOR TO 06/05/2024

DIVISION OF MOTORIST SERVICES       TALLAHASSEE       FLORIDA       DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

*Robert R. Kynoch*
Robert R. Kynoch
Director

David M. Kerner
Executive Director

**TRANSFER OF TITLE BY SELLER** (This section must be completed at the time of sale.)
Federal and/or state law require that the seller state the mileage, purchaser's name, selling price and date sold in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. This title is warranted to be free from any liens except as noted on the face of the certificate and the motor vehicle or vessel described is hereby transferred to:

Seller Must Enter Purchaser's Name _____     Address _____
Seller Must Enter Selling Price _____     Seller Must Enter Date Sold _____
I/We state that this ☐ 5 or ☐ 6 digit odometer now reads |_|_|_|_|_|_| ☒ (no tenths) miles, date read _____ and I hereby certify that to the best of my knowledge the odometer reading
☐ 1. reflects ACTUAL MILEAGE     ☐ 2. is IN EXCESS OF ITS MECHANICAL LIMITS     ☐ 3. is NOT THE ACTUAL MILEAGE.
UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

SELLER Must Sign Here _____     CO-SELLER Must Sign Here _____
Print Here _____     Print Here _____
Selling Dealer's License Number _____     Tax No _____     Tax Collected _____
Auction Name _____     License Number _____
PURCHASER Must Sign Here _____     CO-PURCHASER Must Sign Here _____
Print Here _____     Print Here _____
NOTICE: PENALTY IS REQUIRED BY LAW IF NOT SUBMITTED FOR TRANSFER WITHIN 30 DAYS AFTER DATE OF PURCHASE.

STATE OF FLORIDA

**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**DIVISION OF MOTOR VEHICLES**
2900 Apalachee Parkway • Neil Kirkman Building - Tallahassee, FL 32399-0620
Notice of Sale of Motor Vehicle, Mobile Home or Vessel

Section 319.22(2), Florida Statutes, requires that the seller file a Notice of Sale with the department within 30 days after the sale or transfer of the motor vehicle, vessel or mobile home. Filing this form removes any civil liability for the operation of the sold motor vehicle, vessel or mobile home. In addition to filing this form, we suggest you keep a copy of your bill of sale (we suggest it be notarized), certificate of title or other type of transaction document showing the vehicle was sold. **Complete the information below, tear the top portion of this document at the perforation and mail to the address above or submit to your local tax collector's office or license plate agency.**

I have this _____ day of _____, _____, transferred by assignment of and delivered Florida Certificate of Title to:

Name: Purchaser(s) _____   Purchaser's DL/ID _____
                   First              MI              Last

Address _____   Selling Price $ _____

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

Seller's Signature _____   Co-Seller's Signature _____

NOTE: THE SUBMISSION OF THIS FORM, ACCURATELY COMPLETED, TO A TAX COLLECTOR'S OFFICE, LICENSE PLATE AGENCY OR TO THE ADDRESS ABOVE WILL ALLOW THE TITLE CLERK TO UPDATE THE DMV DATABASE TO REFLECT THE TITLE RECORD AS "SOLD". HOWEVER, THE OWNERSHIP STATUS WILL NOT CHANGE UNTIL THE PURCHASER APPLIES FOR AND IS ISSUED A CERTIFICATE OF TITLE.

---

ODOMETER CERTIFICATION - Federal and state laws require that you state the mileage in connection with transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**FIRST REASSIGNMENT BY LICENSED DEALER**

Selling Dealer's License No.: _____   Selling Dealer's Name: _____   Tax No.: _____   Tax Collected: _____

Selling Dealer's Address: _____   Date Sold: _____

Purchaser's Name(s): _____   Address: _____

I/WE STATE THAT THIS ☐ 5 OR ☐ 6 DIGIT ODOMETER NOW READS [      ] [      ] |XX| (NO TENTHS) MILES, DATE READ ___/___/___, AND I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING:

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BOX
☐ 1. REFLECTS ACTUAL MILEAGE
☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS (EXCESS OF ITS MECHANICAL LIMITS APPLIES TO 5 DIGIT ODOMETERS)
☐ 3. IS NOT THE ACTUAL MILEAGE WARNING - ODOMETER DISCREPANCY

Purchaser Must Sign Here: _____   Co-Purchaser Must Sign Here: _____

Print Here: _____   Print Here: _____

Seller/Agent Must Sign Here: _____   Auction Name (When Applicable): _____

Print Here: _____   Auction License Number: _____

**SECOND REASSIGNMENT BY LICENSED DEALER**

Selling Dealer's License No.: _____   Selling Dealer's Name: _____   Tax No.: _____   Tax Collected: _____

Selling Dealer's Address: _____   Date Sold: _____

Purchaser's Name(s): _____   Address: _____

I/WE STATE THAT THIS ☐ 5 OR ☐ 6 DIGIT ODOMETER NOW READS [      ] [      ] |XX| (NO TENTHS) MILES, DATE READ ___/___/___, AND I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING:

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BOX
☐ 1. REFLECTS ACTUAL MILEAGE
☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS (EXCESS OF ITS MECHANICAL LIMITS APPLIES TO 5 DIGIT ODOMETERS)
☐ 3. IS NOT THE ACTUAL MILEAGE WARNING - ODOMETER DISCREPANCY

Purchaser Must Sign Here: _____   Co-Purchaser Must Sign Here: _____

Print Here: _____   Print Here: _____

Seller/Agent Must Sign Here: _____   Auction Name (When Applicable): _____

Print Here: _____   Auction License Number: _____

**THIRD REASSIGNMENT BY LICENSED DEALER**

Selling Dealer's License No.: _____   Selling Dealer's Name: _____   Tax No.: _____   Tax Collected: _____

Selling Dealer's Address: _____   Date Sold: _____

Purchaser's Name(s): _____   Address: _____

I/WE STATE THAT THIS ☐ 5 OR ☐ 6 DIGIT ODOMETER NOW READS [      ] [      ] |XX| (NO TENTHS) MILES, DATE READ ___/___/___, AND I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING:

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BOX
☐ 1. REFLECTS ACTUAL MILEAGE
☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS (EXCESS OF ITS MECHANICAL LIMITS APPLIES TO 5 DIGIT ODOMETERS)
☐ 3. IS NOT THE ACTUAL MILEAGE WARNING - ODOMETER DISCREPANCY

Purchaser Must Sign Here: _____   Co-Purchaser Must Sign Here: _____

Print Here: _____   Print Here: _____

Seller/Agent Must Sign Here: _____   Auction Name (When Applicable): _____

Print Here: _____   Auction License Number: _____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:

**EVAN PHILLIP JOWERS**
DEBTOR(S)

Case no. **24-13584-MAM**
Chapter 11 Case

**AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF
VW CREDIT, INC.'S MOTION FOR RELIEF FROM STAY**

**BEFORE ME**, the undersigned authority, personally appeared Mannu Sharma, who being a duly sworn, deposes and says:

1. I am Mannu Sharma. I am employed as an Administrative Service Representative by VW Credit, Inc., P.O. Box 734400 Dallas, Texas 75373-4400.

2. This affidavit is based upon VW Credit, Inc.'s lease payment records. These records are regularly maintained in the course of business of VW Credit, Inc. and it is the regular practice of VW Credit, Inc. to make and maintain these records. These records reflect lease payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records for VW Credit, Inc. and regularly use and rely upon them in the performance of my duties.

3. Debtor(s) maintains a lease, account number xxxxxx6857, with VW Credit, Inc.. VW Credit, Inc. holds a security interest in the following property: 2023 AUDI Q5 SPORTBACK, VIN: WA16AAFY5P2020845.

4. The information below identifies the payments that have not been received by VW Credit, Inc. plus any applicable late charges:

| | |
|---|---|
| Regular Payment: 09/22/2025 | $48,017.42 |
| Late Charges | $480.61 |
| Court Costs | $977.04 |
| Total Arrearage | $49,475.07 |

5. The lease account has matured as of September 22, 2025

1

7231-N-1486

6. The payoff balance owed on this lease account is $49,475.07, as of October 16, 2025, excluding attorney fees and costs.

7. The lease agreement and proof of title attached to this motion as exhibits are turn and accurate copies of the original documents.

8. This concludes my affidavit.

*[signature]*

Name: Mannu Sharma
Title: Administrative Service

SWORN TO AND SUBSCRIBED TO under penalty of perjury as being true and correct based on the personal knowledge of VW Credit, Inc.'s books and business records this 17th day of October 2025, by Mannu Sharma, who is personally known to me.

NOTARY PUBLIC:
Sign: *[signature]*
Print: Jasmine S. Turner

My Commission Expires: 04.10.2028

OFFICIAL SEAL
JASMINE SHARIE TURNER
Notary Public, State of Illinois
Commission No. 989346
My Commission Expires
April 10, 2028